J-A07041-21

2021 PA Super 119

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
   :   PENNSYLVANIA
   :
      v.   :
   :
   :
   :
BRY'DRICK DA'MICHAEL WRIGHT   :
   :
      Appellant   :   No. 815 MDA 2020

Appeal from the Judgment of Sentence Entered April 28, 2020
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0006129-2018

BEFORE:   BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:               **FILED JUNE 09, 2021**

Appellant, Bry'Drick Da'Michael Wright, appeals from the judgment of sentence of 42 to 84 months' incarceration entered in the Court of Common Pleas of Dauphin County after a jury found him guilty of Possession With Intent to Deliver ("PWID"), Possession of Marijuana—Small Amount Personal Use, and Use or Possession of Drug Paraphernalia.[1]  He challenges the denial of his motion to suppress a state parole officer's warrantless vehicle search, the sufficiency of evidence offered to prove his constructive possession of contraband recovered from the vehicle, and the admission of incriminating text messages retrieved from his cell phone.  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30), (31), and (32), respectively.

The trial court's Pa.R.A.P 1925(a) opinion provides the pertinent facts and procedural history, as follows:

A criminal complaint [charging Appellant with multiple narcotics and firearm violations] was filed October 4, 2018 and Bry'Drick Da'Michael Wright (hereinafter "Appellant") was formally arraigned January 4, 2019. On February 25, 2019, Appellant filed a pre-trial motion to suppress, and a suppression hearing was held March 21, 2019. On June 19, 2019, [the trial court] denied Appellant's pre-trial motion to suppress. On December 19, 2019, Appellant's Motions *in limine* and demand for an offer of proof regarding cell phone extraction were ordered to be heard immediately prior to trial.

[Appellant's jury trial commenced on March 9, 2020. The Commonwealth presented evidence that,] [o]n October 4, 2018, Adult Parole Officer ("APO") [Arlen] Shipley and Harrisburg Police Officer Daril Foose partnered to perform a probation check on Appellant's brother, Marquis Emery, an individual who was under APO Shipley's supervision at the time. [N.T.] Jury Trial, March 9-11, 2020, page 52 (hereinafter "N.T. at __"). While performing the check, the two noticed the smell of "freshly burnt marijuana." N.T. at 59.

APO Shipley [testified] that Appellant stood up and in doing so revealed that he was sitting on a small bag of marijuana, which Appellant quickly admitted was his. N.T. at 61-62. After noticing Appellant trying to give a car key to Angela Murray, APO Shipley questioned Appellant about the key, to which Appellant replied that it was just a key to his locker at work. N.T. at 95-96. APO Shipley subsequently [used the key to] perform a search of the Chevrolet Impala and found a handgun in the center console. N.T. at 71.

Officer Foose [testified] that Appellant admitted that he was sitting on the bag of marijuana prior to standing up. N.T. at 94. After APO Shipley found the gun, Officer Foose placed Appellant under arrest and searched the remainder of the car, finding a white shopping bag containing marijuana and four bundles of fentanyl and heroin, as well as a brown box containing multiple empty white and blue heroin baggies. N.T. at 103.

Officer Foose obtained consent from Appellant to search his cell phone, N.T. at 114, and noticed that his phone contained messages with multiple individuals for the purchase of firearms as well as the distribution and sale of drugs. N.T. at 115. Subsequently, Officer Foose seized the cell phone and ordered a "phone dump" – forensic samples of the cell phone's content.[fn]

[FN] Commonwealth exhibits 21 through 27 contain the messages seized in the phone dump.

Chief John Goshert also testified about the messages contained on the Appellant's cell phone. First, he testified to several messages that linked the phone to the Appellant. *See* N.T. at 197, 198. For example, one of these text messages says, "you're texting why not take my calls Bry'Drick[.]" N.T. at 198, Commonwealth's Exhibit 28. There was no indication that the reply messages were sent by someone other than the Appellant. Additionally, Chief Goshert testified about text messages that linked the Appellant to the Chevy Impala. N.T. at 200. These included messages sent to the Appellant that said, "grab the Impala come get a n***a[,]" to which the Appellant responded, "on my way." Commonwealth's Exhibit 21-22.[fn] Finally, Chief Goshert testified about several text messages relating to smoking marijuana. N.T. at 203-230. *See generally* Commonwealth's Exhibits 9-20.

[FN] There were additional text messages linking the Appellant to the Chevy Impala. N.T. at 200-203.

[At the conclusion of the jury trial], Appellant was found guilty [of the above-listed offenses]. On April 28, 2020, . . . he was sentenced to a 42 to 84-month sentence [of incarceration on the charge of PWID] and [an additional 12-month probationary term to run concurrently.] On May 4, 2020, Appellant filed a post-sentence motion raising a weight of the evidence claim. On May 19, 2020, [the trial court] denied Appellant's post-sentence motion.

On June 9, 2020, a timely notice of appeal was filed in the Pennsylvania Superior Court. In compliance with [the trial court's] 1925 order, Appellant filed an "Amended Statement of Errors Complained of on Appeal" ("Concise Statement") [raising multiple issues].

Trial Court Opinion, 7/22/2020, at 1-4.

Appellant presents the following questions for this Court's consideration:

1. Did not the court err in denying Appellant's motion to suppress the fruits of the warrantless search of a vehicle by a state parole agent and a police officer?

2. Did not the court err in admitting text messages extracted from a cell phone when the Commonwealth failed to authenticate such evidence under Pa.R.E. 901 by establishing Appellant's authorship of such communications?

3. Was not the evidence insufficient to sustain a conviction for possessing contraband that was found in a vehicle that Appellant did not own when there was insufficient proof of his constructive possession of the contraband and when he was merely present along with a group of other persons on a porch near the parked vehicle?

Appellant's brief, at 7.

In Appellant's first issue, he maintains the court erred in denying his motion to suppress all evidence obtained from the state parole agent's warrantless vehicle search of the Chevrolet Impala. The standard of review an appellate court applies when considering an order denying a suppression motion is well established. "On review from an order suppressing evidence, we 'consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted.'" ***Commonwealth v. Johnson***, 202 A.3d

125, 127 (Pa. Super. 2019). "This Court is bound by the factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error." *Commonwealth v. Haynes*, 116 A.3d 640, 644 (Pa. Super. 2015).

Because the Commonwealth prevailed in the suppression court, we consider only the Commonwealth's evidence and the evidence presented by Appellant that remains uncontradicted. *Commonwealth v. Harlan*, 208 A.3d 497, 499 (Pa. Super. 2019). Additionally, we may consider only the evidence presented at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085–1087 (Pa. 2013).

At Appellant's March 21, 2019 suppression hearing, Agent Shipley was the sole witness, and he testified that on the evening of October 4, 2018, Officer Foose and he visited 1720 North Street, Harrisburg, the approved parole residence of Marquis Emery, Appellant's brother,[2] who had been under Agent Shipley's active supervision as a high-risk offender. N.T., Suppression Hearing, 3/21/19 at 6. As they drove toward the address—from which authorities had recently confiscated 120 bundles of heroin and a firearm, and which is otherwise situated in a high-crime, high-drug neighborhood—they noticed four males sitting on the porch. As they alighted the vehicle, both the agent and officer detected the smell of freshly burnt marijuana. N.T. at 8-10.

---

[2] The notes of testimony reveal that Appellant's father and aunt also resided at this residence.

Agent Shipley addressed the group and recognized Appellant once he began talking with him. N.T. at 11. Specifically, the agent knew Appellant was Emery's brother and that he was also on state parole, a status to which Appellant admitted during their conversation. N.T. at 11-13. When Agent Shipley asked Appellant to stand for a consented-to pat-down, he observed a bag of marijuana on Appellant's chair. N.T. at 13, 26. The agent also noticed Appellant was making a subtle attempt to pass a set of keys and a single key to his aunt, Angela Murray, but he ordered the group to leave the keys where they were. N.T. at 13-14, 29. At this point, Agent Shipley indicated to Appellant that he was addressing him as state parole agent to state parolee. N.T. at 15.

When asked what the set of keys were for, Appellant said the set belonged to his father's van, which he had just driven to the present location. Agent Shipley used the keys to perform a consent search of the van, which yielded no contraband. N.T. at 14-15. The agent returned to the porch and asked Appellant what the single key was for, and Appellant claimed it was for his work locker. The agent deemed this a lie, he testified, as he knew from its distinctive shape and size that it was a vehicle key. N.T. at 16-17.

With key in hand, Agent Shipley walked directly to a white Chevrolet Impala and used the key to unlock and open a door. He entered the vehicle and observed a semiautomatic firearm in the center console. N.T. at 17-18. He alerted Officer Foose and other officers now on the scene of his finding and

- 6 -

allowed them to complete the search, which uncovered additional marijuana, heroin, and fentanyl. N.T. at 18-19.

Appellant argues that the small amount of marijuana discovered in his possession and the prior drug-related history of his brother's residence were insufficient to create a reasonable suspicion that the Chevrolet Impala contained contraband. As we discern Agent Shipley to have acted on more extensive information than Appellant acknowledges in this argument and view such information as adequate to provide reasonable suspicion supporting the vehicle search, we deem Appellant's argument meritless.

Our Supreme Court has summarized state parole agents' authority and duties with respect to parolees as follows:

> [S]tate parole agents' authority and duties with respect to parolees are prescribed by two sections of the Prisons and Parole Code. Section 6152 declares agents to be peace officers and provides them with police power to arrest without warrant any parolee under supervision for violating parole conditions. **See** 61 Pa.C.S. § 6152. Section 6153 deems parole agents to be in a "supervisory relationship with their offenders," aimed at assisting parolees in rehabilitation and reassimilation and protecting the public. **Id.** § 6153(a). This section further outlines the procedures and requirements for agents to search the person and property of offenders, **see id.** § 6153(b)(1), (d), and provides that such searches must comport with the protections of the United States and Pennsylvania Constitutions, **see id.** § 6153(b)(2). Another provision prevents the exclusion of evidence from parole or criminal proceedings based solely on a violation of the statute. **See id**. § 6153(c).

*Commonwealth v. Mathis*, 173 A.3d 699, 701–702 (Pa. 2017) (footnote omitted). [3]

"[P]arolees agree to 'endure warrantless searches' based only on reasonable suspicion in exchange for their early release from prison." *Commonwealth v. Curry*, 900 A.2d 390, 394 (Pa. Super. 2006) (quoting *Commonwealth v. Appleby*, 856 A.2d 191, 195 (Pa. Super. 2004)). "[Parole] agents need not have probable cause to search a parolee or his property; instead, reasonable suspicion is sufficient to authorize a search." *Id*.

A search will be deemed reasonable "if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty." *Gould*, 187 A.3d at 935 (citation omitted). *See* 61 Pa.C.S. § 6153(d)(2) (grounds for state parole agent's property search exist "if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.").

---

[3] Section 6153 also requires that, absent exigent circumstances, a parole agent must obtain prior approval from a supervisor to conduct a property search. 61 Pa.C.S.A. § 6153(d)(3). However, as noted *supra*, a violation of the statute alone will not constitute grounds for suppression of evidence. *Id.* at (c). *Commonwealth v. Gould*, 187 A.3d 927, 935 (Pa. Super. 2018)

Parole officers may form reasonable suspicion based on personal observations and third-party information. ***Commonwealth v. Colon***, 31 A.3d 309, 315–16 (Pa. Super. 2011). For example, in ***Commonwealth v. Smith***, 85 A.3d 530 (Pa. Super. 2014), a parole officer smelled marijuana during a routine walkthrough of a parolee's home. We held that this experience gave rise to reasonable suspicion, justifying the parole officer's search of the home. ***Id.*** at 537.

At the suppression hearing, the Commonwealth established that Agent Shipley had formed a reasonable suspicion that Appellant was storing contraband in the Chevrolet Impala. Specifically, Agent Shipley encountered Appellant sitting on the porch of his brother's residence, a known drug distribution address within a larger neighborhood marked by drug crime. As he approached, Agent Shipley smelled "freshly burnt marijuana," and he soon discovered that Appellant had been concealing a personal baggie of marijuana underneath himself as he sat in a chair.

Though Appellant was generally cooperative during the encounter—readily claiming ownership of all keys resting on a table next to his chair and consenting to the search of a van he alleged he had just driven—he lied to Agent Shipley about the single key placed atop the others, saying it belonged to his work locker. Agent Shipley rejected Appellant's information, as he unquestionably recognized the key as another car key.

At that moment, the totality of circumstances known to Agent Shipley included: Appellant's presence at an address implicated in the local drug

trade; the aroma of recently smoked marijuana in the air, coupled with Appellant's attempt to hide the small amount of marijuana in his possession; his effort to surreptitiously remove the car keys from the table without catching Agent Shipley's attention; his claim of ownership of the single key; and, his subsequent lie about the single key belonging to his work locker, suggesting an attempt to draw the agent's attention away from the car to which it really belonged to prevent a vehicle search.

Agent Shipley thus articulated the specific observations and reasonable inferences therefrom that gave him reasonable suspicion to believe Appellant had involved the Chevrolet Impala in his present illegal activity. His testimony at the suppression hearing thus supported the propriety of the contested vehicle search. **See Gould**, 187 A.3d at 935. Accordingly, we grant Appellant no relief on this claim.

In Appellant's second issue, he posits the trial court improperly admitted the Commonwealth's proffer of text message evidence extracted from Appellant's cell phone, as the Commonwealth's failure to properly authenticate the text messages rendered them inadmissible.

> The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. ... Evidence is admissible if it is relevant—that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact—and its probative value outweighs the likelihood of unfair prejudice.

*Commonwealth v. Clemons*, 200 A.3d 441, 474 (Pa. 2019) (citations omitted).

> Pursuant to Pennsylvania Rule of Evidence 901, authentication is required prior to admission of evidence. The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. *See* Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. *See* Pa.R.E. 901(b)(1). Evidence that cannot be authenticated by a knowledgeable person, pursuant to subsection (b)(1), may be authenticated by other parts of subsection (b), including circumstantial evidence pursuant to subsection (b)(4). *See* Pa.R.E. 901(b)(4).

*Commonwealth v. Talley*, 236 A.3d 42, 59 (Pa. Super. 2020) *reargument denied* (September 23, 2020).

In *Commonwealth v. Koch*, 39 A.3d 996 (Pa. Super. 2011), *affirmed by an equally divided court*, 630 Pa. 374, 106 A.3d 705 (2014),[4] this Court addressed authentication challenges in the context of text messaging. At trial, a detective who had transcribed the texts testified that incriminating text messages came from a cellular telephone belonging to the defendant. This Court observed, however, that "authentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person." *Id.* at 1005. Where there was no

---

[4] Because an equally divided Supreme Court affirmed this Court's grant of a new trial in *Koch*, our Supreme Court's decision is not binding in this case. *See Commonwealth v. Mosley*, 114 A.3d 1072, 1082 n.11 (Pa. Super. 2015) (holding that "[w]hen a judgment of sentence is affirmed by an equally divided court, as in the *Koch* case, no precedent is established and the holding is not binding on other cases.") (citation omitted).

- 11 -

testimony from any person who had sent or received the text messages, nor any contextual clues revealing the identity of the cellular phone's user, the detective's testimony was insufficient to authenticate the text messages. *Id.* We thus concluded that the admission of the text messages represented an abuse of discretion. *Id.*

Distinguishing the present case from the facts of *Koch*, however, is that evidence presented at Appellant's trial provided more than "mere confirmation that the number or address belonged to a particular person." *Id.* at 1005. Initially, Officer Foose testified that she confiscated the cell phone in question from Appellant with his consent, and he was able to supply the complicated password allowing her access to its messages. N.T. at 196.

Chief John Goshert also read several text messages from the phone that supplied significant contextual clues revealing Appellant's identity as the cell phone's user engaged in drug distribution-related communications. Admitted into evidence during Chief Goshert's testimony were Commonwealth exhibits depicting screen shots of outgoing text messages transmitted in the relevant time such as, "You not beating this case I sentence you to life with Bry'Drick Wright," and two incoming texts under the title "mom," one of which said "you're texting why not take my calls Bry'Drick," and a second that reads "Too important to take your mother's calls. That is sad, Bry'Drick. I am home hitting the trash because I knew you wouldn't." N.T. at 198.

Multiple text references to the Impala were also read at trial, including one from September 21, 2018, just thirteen days before Appellant's arrest,

- 12 -

asking if he is driving the Impala that day. N.T. at 201. From October 4th, 2018, the day of Appellant's arrest, an outgoing text message indicates he is at his father's "hanging out" with his brother "out front", and he needs to check inside the Impala for the keys. N.T. at 202. Nowhere among the messages retrieved in the phone drop was there an outgoing message indicating a person other than Appellant was using the phone. N.T. at 199.

These messages were offered to authenticate numerous texts from Appellant's phone, made during the same time frame, in which drug sales were arranged. Specifically, incoming messages from September 15 through October 2, 2018, seeking to arrange drug purchases of heroin/fentanyl, such as, "I got 40 can you do a bun?", or pure fentanyl, "do you have white bags," were received and answered. N.T. at 204-230. The outgoing messages all indicate the transaction can be made, and the incoming replies frequently confirm, occasionally with complaints about the quality of the previous bundle purchased. *Id*. In many of the text conversations, the outgoing message from Appellant's cell phone tells the prospective buyer that their meeting place is "North Street," the street where Appellant was arrested on October 4th. *Id*.

This evidence, collectively, provided contextual clues necessary to authenticate that the incriminating text messages taken from the cell phone Appellant handed to authorities were authored by Appellant. Accordingly, we discern no merit to Appellant's second issue.

In Appellant's final issue, Appellant argues that the evidence was insufficient to prove he constructively possessed the contraband recovered

from the Impala, as the evidence established only that he was merely present on the porch near the car. Where his aunt, Angela Murray, was the registered owner of the Impala, there were no documents bearing his name in the vehicle and no forensic testing of the men's clothing found in the vehicle, and no one saw him access the car, he argues the jury could not reasonably infer that he possessed or controlled the contraband in question.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, "the [fact-finder],

- 14 -

which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." ***Commonwealth v. Ramtahal***, 33 A.3d 602, 607 (Pa. 2011).

> This Court has held that "[p]ossession can be found by proving possession, constructive possession, or joint constructive possession." ***Commonwealth v. Heidler***, 741 A.2d 213, 215 (Pa. Super. 1999). Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. ***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013) (conviction under 18 Pa.C.S. § 6106(a) supported by a finding of constructive possession). ***See also Commonwealth v. Parker***, 847 A.2d 745 (Pa. Super. 2004) (same). "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." ***Hopkins***, ***supra*** at 820 (citation and quotation omitted). "We have defined constructive possession as conscious dominion," meaning that the defendant has "the power to control the contraband and the intent to exercise that control." ***Id.*** (citation and quotation omitted). "To aid application, we have held that constructive possession may be established by the totality of the circumstances." ***Id.*** (citation and quotation omitted).

> It is well established that, "[a]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." ***Commonwealth v. Haskins***, 450 Pa.Super. 540, 677 A.2d 328, 330 (1996) (citation omitted). In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue. ***See***, ***e.g.***, ***Commonwealth v. Davis***, 743 A.2d 946, 953–54 (Pa. Super. 1999) (holding that evidence was sufficient to prove constructive possession over drugs found in common areas of an apartment where the defendant entered the apartment using his own key, and possessed $800 in cash on his person, and police recovered defendant's identification badge, size-appropriate clothing, and firearms from a bedroom).

- 15 -

> [] a defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items. ***Commonwealth v. Valette***, 531 Pa. 384, 613 A.2d 548, 551 (1992). Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt. ***Commonwealth v. Juliano***, 340 Pa.Super. 501, 490 A.2d 891, 893 (1985). Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession. ***Id.***, *citing* ***Commonwealth v. Thompson***, 286 Pa.Super. 31, 428 A.2d 223, 224 (1981).
>
> If the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. ***Valette***, ***supra*** at 551. "It is well settled that facts giving rise to mere 'association,' 'suspicion' or 'conjecture,' will not make out a case of constructive possession.

***Commonwealth v. Parrish***, 191 A.3d 31, 36-37 (Pa. Super. 2018).

Here, the circumstantial evidence admitted at trial showed the contraband found in the Impala was within Appellant's knowledge, control, and dominion on October 4, 2018, the day of his arrest. Despite Appellant's lack of ownership interest in the Impala, his text messages admitted into evidence showed he was a frequent driver of the vehicle. Both his claim of owning the car's key as it lay by his side and his attempt to mislead Agent Shipley about the nature of the key to prevent a vehicle search of the Impala were additional actions consistent with someone who had both control over the vehicle and concern that the agent would discover contraband if he gained access to it. Finally, evidence of the drug deals arranged on Appellant's cell phone corroborated Appellant's role in selling to calling customers the very

same illicit drugs—marijuana, heroin, and fentanyl—found in the trunk of the Impala.

Viewing this record in the light most favorable to the Commonwealth, as verdict winner, and giving the prosecution the benefit of all reasonable inferences, we conclude that there was sufficient circumstantial evidence for the jury as finder of fact to conclude that Appellant constructively possessed the contraband inside the Impala. The fact that Appellant was not the owner of the vehicle, or the possibility that the firearm and narcotics may have been primarily possessed by someone else, did not render the evidence insufficient to prove Appellant's constructive possession, because more than one person may have constructive possession of an item at the same time. **See Commonwealth v. Johnson**, 26 A.3d 1078, 1094 (Pa. 2011) (recognizing that one or more individuals may be deemed to have constructive possession of contraband where the item is in an area of joint control and equal access); **see also Haskins**, 677 A.2d at 330 (holding another person's control and access does not eliminate the defendant's constructive possession, as two actors may have joint control and equal access and thus both may constructively possess contraband). Accordingly, we conclude Appellant's sufficiency of the evidence challenge must fail.

For the foregoing reasons, we deny Appellant relief on his claims and affirm judgment of sentence in the above-captioned matter.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/9/2021