J-S32036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID BOBE | : | |
| | : | |
| Appellant | : | No. 1673 MDA 2022 |

Appeal from the Judgment of Sentence Entered September 30, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0002608-2018

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED: DECEMBER 21, 2023**

Appellant David Bobe appeals *nunc pro tunc* from the judgment of sentence imposed following his conviction for drug delivery resulting in death (DDRD), criminal use of a communication facility, and two counts of possession of a controlled substance with intent to deliver (PWID).[1] Appellant challenges the sufficiency of the evidence supporting his conviction for DDRD. We affirm.

The trial court summarized the relevant facts and procedural history of this case as follows:

> On May 8, 2018, Detective Eric Morris of the Swatara Township Police Department filed a criminal complaint charging Appellant with one (1) count of [DDRD], one (1) count of criminal use of communication facility, and two (2) counts of [PWID]. The charges stemmed from an investigation that began on May 7, 2018, when Swatara Township police officers were dispatched to

---

[1] 18 Pa.C.S. §§ 2506(a), 7512(a), and 35 P.S. § 780-113(a)(30), respectively.

753 South 82nd Street for a possible overdose. There, officers found Logan T. George [(Decedent)] lying in the kitchen of his residence[,] and while attempts were made to revive [Decedent], he was ultimately pronounced dead. On the kitchen counter, syringes were found along with empty and full bags of heroin. There were also empty heroin bags found in the kitchen trash can.

An inspection of [Decedent's] phone revealed two (2) incoming calls from a caller identified by the name "Brooklyn" at 9:42 a.m. [Decedent's] father indicated that he spoke with his son at 10:00 a.m., and there was no further activity on [Decedent's] phone after that. The police investigation ultimately led to the identification of "Brooklyn" as [Appellant]. Appellant acknowledged selling heroin to [Decedent] approximately four (4) times in the week leading up to [Decedent's] death, the last time being May 7, 2018.

Trial Ct. Op., 4/3/23, at 1-2 (formatting altered).

On May 17, 2022, a jury found Appellant guilty on all counts. On September 30, 2022, the trial court sentenced Appellant to an aggregate sentence of thirteen and one-half to twenty-eight years of incarceration. *See* Sentencing Order, 9/30/22, at 1.[2] Appellant did not file post-sentence motions or an appeal.

On November 28, 2022, Appellant filed a timely Post Conviction Relief Act[3] (PCRA) petition requesting the reinstatement of his direct appeal rights.

---

[2] The trial court sentenced Appellant to a term of ten and one-half to twenty-two years of incarceration for DDRD at count one. *See* Sentencing Order, 9/30/22, at 1. On count two, criminal use of a communication facility, the trial court imposed no further penalty. *See id.* The trial court concluded that the PWID conviction at count three merged with DDRD at count one, and on the PWID conviction at count four, the trial court sentenced Appellant to a term of three to six years of incarceration to be served consecutively to the sentence at count one. *See id.* The trial court awarded Appellant four years, four months, and twenty-two days of credit for time served. *See id.* at 2.

[3] 42 Pa.C.S. §§ 9541-9546.

On December 2, 2022, the trial court reinstated Appellant's direct appeal rights *nunc pro tunc*, and Appellant filed a timely notice of appeal. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issue for review: "Whether the Commonwealth failed to present sufficient evidence that the narcotics which caused the death of [D]ecedent were the same narcotics sold by Mr. Bobe, when there was different packaging of narcotics in [D]ecedent's home, and there was evidence of a prior drug deal with another subject?" Appellant's Brief at 6. In support of his claim, Appellant argues that although he admitted that he sold heroin to Decedent, the Commonwealth failed to establish a causal link between Appellant's conduct and Decedent's death. *See id.* at 18-20. Appellant asserts that when he was arrested after Decedent's death, he was selling blue baggies of heroin. *See id.* at 21. However, when Decedent died, the police only found green and white baggies of heroin at Decedent's home. *See id.* at 20-22. Further, Appellant argues that there was no evidence establishing which baggie of heroin led to Decedent's death, and it was speculative to conclude that the heroin he sold to Decedent resulted in Decedent's death. *See id.* at 20-23. Therefore, Appellant concludes that the Commonwealth failed to prove the elements of DDRD. *See id.* at 25.

The Commonwealth responds that there was sufficient evidence establishing that Appellant sold heroin to Decedent and that this heroin resulted in Decedent's death. Commonwealth's Brief at 4-5. The Commonwealth also notes that the last phone calls Decedent made were to

"Brooklyn," the Commonwealth established that "Brooklyn" was Appellant, Appellant admitted selling heroin to Decedent four different times in the week prior to Decedent's death, and that there were empty baggies of heroin in Decedent's house when he died. *See id.* at 5-6.

When presented with a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Wright*, 255 A.3d 542, 552 (Pa. Super. 2021) (citation omitted and formatting altered). "Importantly, the fact finder, which passes upon the weight and credibility of each witness's testimony, is free to believe

all, part, or none of the evidence." *Id.* (citation omitted and formatting altered).

The crime of DDRD is defined as follows:

A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act [(Drug Act)], and another person dies as a result of using the substance.

18 Pa.C.S. § 2506(a).

When the defendant "intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance," he/she must do so in a in a manner that violates Section 780-113(a)(14) or (30) of the Drug Act. Accordingly, a violation of one of the specifically referenced provisions of the Drug Act is an element of the crime of DDRD.

*Commonwealth v. Peck*, 242 A.3d 1274, 1281 (Pa. 2020). This Court has explained that DDRD consists of (1) intentionally administering, dispensing, delivering, giving, prescribing, selling, or distributing any controlled substance or counterfeit controlled substance; and (2) death caused by or resulting from the use of that substance. *Commonwealth v. Kakhankham*, 132 A.3d 986, 991-92 (Pa. Super. 2015).

Here, Appellant concedes that he delivered heroin to Appellant, but he claims that the causal connection between his delivery of heroin and Appellant's death was speculative. *See* Appellant's Brief at 18; *see also Peck*, 242 A.3d at 1281; 18 Pa.C.S. § 2506(a).

In **Kakhankham**, the appellant argued that the Commonwealth failed to prove that heroin was the sole or primary cause of the victim's death. **Kakhankham**, 132 A.3d at 993 n.8. The **Kakhankham** Court concluded that the appellant stipulated that heroin caused the victim's death. **See id.** However, the **Kakhankham** Court noted:

> [The d]efendant's conduct need not be the only cause of the victim's death in order to establish a causal connection. Criminal responsibility may be properly assessed against an individual whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result.

**Id.** (citation omitted).

Recently, this Court addressed the causal connection necessary to prove DDRD:

> It is undisputed that the Commonwealth must prove a direct causal relationship between the acts of a defendant and the victim's death. Criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor producing the death. This is true even though other factors combined with that conduct to achieve the result. Additionally:
>
>> In order to impose criminal liability, causation must be direct and substantial. Defendants should not be exposed to a loss of liberty based on the tort standard which only provides that the event giving rise to the injury is a substantial factor. Although typically the tort concept refers to only substantial and not to direct and substantial as in the criminal context, the additional language in the criminal law does not provide much guidance. Therefore, criminal causation has come to involve a case-by-case social determination; *i.e.*, is it just or fair under the facts of the case to expose the defendant to criminal sanctions. In other words, was the defendant's conduct so directly and substantially linked to the actual result as to give rise to imposition of criminal liability or was

> the actual result so remote and attenuated that it would be unfair to hold the defendant responsible for it?
>
> ***Commonwealth v. Rementer***, 598 A.2d 1300, 1304–05 (Pa. Super. 1991). In seeking to define the requirement that a criminal defendant's conduct be a direct factor in the death of another, the courts of this Commonwealth have held that so long as the defendant's conduct started the chain of causation which led to the victim's death, criminal responsibility for the crime of homicide may properly be found.
>
> It has never been the law of this Commonwealth that criminal responsibility must be confined to a sole or immediate cause of death. Criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result.

***Commonwealth v. Keogh***, 585 MDA 2022, 2023 WL 118687, at *5-6 (Pa. Super. filed Jan. 6, 2023) (unpublished mem.) (quoting ***Commonwealth v. Fabian***, 60 A.3d 146, 152 (Pa. Super. 2013)) (some citations omitted and formatting altered).[4]

> Here, the trial court addressed Appellant's claim as follows:
>
> The evidence presented at trial established that [Decedent] perished from a drug overdose on May 7, 2018. This was determined, in part, by a presumptive drug test the coroner performed at the scene, which was a urine draw that was positive for both marijuana and heroin. [Wayne Ross, M.D., a forensic pathologist with the Dauphin County Coroner's Office] also testified that [D]ecedent's cause of death was acute morphine toxicity due to heroin. The jury accepted the evidence presented, which established that [Decedent] had marijuana and heroin in his system at the time of his death. It was also within the purview of the jury to accept Dr. Ross' opinion that heroin was the cause of [Decedent's] death. Further, there was evidence presented

---

[4] ***See*** Pa.R.A.P. 126(b) (providing that unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

that Appellant sold [Decedent] heroin on multiple occasions and had contact with [Decedent] on the day he died. Appellant also texted [Decedent] after he died telling him he had more heroin to sell. There was more than sufficient evidence that Appellant sold the heroin to the deceased which caused his death. Accordingly, the Commonwealth met its burden.

Appellant next maintains that the Commonwealth failed to establish by sufficient evidence that the heroin found in [Decedent's] house was the heroin Appellant admitted selling to [D]ecedent. In this vein, Appellant argues that the evidence presented was insufficient to prove unlawful delivery of a controlled substance.

Here, Appellant admitted to selling heroin to [Decedent] on four separate occasions between May 2nd and May 7th of 2018. Police observed packets of heroin present in [Decedent's] home during their investigation into his drug overdose on May 7, 2018. Additionally, aside from Appellant's admission, outgoing calls to "Brooklyn" from [Decedent's] cell phone showed that those were the last calls made from his phone, presumably after his purchase of the heroin from "Brooklyn." Because the evidence at trial established that, both through direct evidence and circumstantially, the heroin, and empty packets of ingested heroin, found in [Decedent's] home at the time of his overdose and death were supplied by "Brooklyn," the Commonwealth presented sufficient evidence to sustain the Commonwealth's burden of proving that the heroin found in [Decedent's] home was sold to him by Appellant.

Trial Ct. Op. at 8-9.

Following our review of the record, and in viewing the evidence in the light most favorable to the Commonwealth and giving the prosecution the benefit of the reasonable inferences to be drawn from the evidence established at trial, we conclude that there was sufficient evidence supporting Appellant's conviction for DDRD. *See Wright*, 255 A.3d at 552.

At trial, Police Officer Justin Anderson testified that there were green and white baggies of heroin found in Appellant's house, some of those baggies

were empty, some were in the trash, and that there were syringes and other drug paraphernalia in Decedent's house. *See* N.T. Trial, 5/11/22, at 83-85. Detective Eric Morris testified that he found the green bags and white bags at Decedent's house, and that Appellant was selling heroin packaged in blue baggies when he was arrested. *See id.* at 168-69. On cross-examination, Detective Morris conceded that during his interview with Appellant, he did not ask Appellant what color bags of heroin he sold to Decedent and that he did not know which specific bag of heroin killed Decedent. *See id.* at 171-173. Detective Morris testified that he did not know which specific bag of heroin killed Decedent or what color it was. *See id.* at 171-73. However, Detective Morris testified that Appellant admitted that he sold heroin to Decedent four times in the days immediately prior to Decedent's death. *See id.* at 152-54.

Further, the record reflects that Decedent and Appellant exchanged ingoing and outgoing phone calls on May 2, 2018, through May 7, 2018, the date of Decedent's death. *See id.* at 152-55. Additionally, Detective Morris testified that Appellant was unaware that Decedent died on May 7, 2018, and Appellant sent Decedent a text message the next day informing him that Appellant could provide Decedent more heroin. *See id.* at 156. Appellant's May 8, 2018 text message read: "Yo, this guy just got some real good dog food,[5] fire." *Id.* Finally, Dr. Wayne K. Ross, a forensic pathologist, testified

---

[5] Detective Morris testified that the term "dog food" refers to heroin. N.T. Trial at 156.

that Decedent's cause of death was acute morphine toxicity due to heroin. *See id.* at 120.

On this record, we conclude that the Commonwealth presented direct and circumstantial evidence that Appellant unlawfully supplied Appellant with heroin on numerous occasions in the days leading up to Decedent's death, Appellant ingested the heroin, and Appellant died from ingesting the heroin. *See id.* at 120, 152-56. On this record, Appellant admittedly sold heroin to Decedent multiple times over several days. Further, the evidence included heroin baggies of different colors, factors that the jury as fact finder could consider in its deliberations in the determination of Appellant's guilt, which included the assessment of credibility, and the resolution of doubts concerning trial evidence in that the jury was entitled to believe all, part, or none of the evidence presented at trial. *See Wright*, 255 A.3d at 552. It is axiomatic that the Commonwealth is not required to prove guilt to a mathematical certainty, and we may not substitute our judgment for that of the fact finder. *See id.* When viewed in the light most favorable to the Commonwealth, the evidence established that Appellant's conduct was a direct and substantial factor in producing Decedent's death from which the jury could reasonably find Appellant guilty. *See Kakhankham*, 132 A.3d at 991-92, 993 n.8; *Keogh*, 2023 WL 118687, at *5-6. On this record, we find that the evidence was sufficient to establish DDRD beyond a reasonable doubt. *See Peck*, 242 A.3d at 1281; *Kakhankham*, 132 A.3d at 991-92; 18 Pa.C.S. § 2506(a). For

these reasons, we conclude that Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/21/2023