J-A28037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
  v.  :
  :
  :
  :
SAMUEL EASLEY   :
  :
  Appellant  :   No. 552 EDA 2024

Appeal from the Judgment of Sentence Entered October 16, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002147-2022

BEFORE: PANELLA, P.J.E., STABILE, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:          **FILED APRIL 9, 2025**

Appellant Samuel Easley appeals from the judgment of sentence imposed following his convictions for burglary and related offenses. Appellant challenges the sufficiency and weight of the evidence. We affirm.

The trial court summarized the underlying facts of this matter as follows:

At trial, the Commonwealth presented the testimony of [the victim]. [The victim] testified that, in early 2020, she commenced a romantic relationship with [Appellant], which ended in October 2021. On or about November 3, 2021, she was inside her home on the 4900 block of North 11th Street in Philadelphia, when [Appellant] "broke into [her] house." [The victim] testified that she was in her second floor bedroom when she heard [Appellant] bust through her front door and run up the stairs. [Appellant] barged into her bedroom, striking her with the door, and demanded his "papers" from her. [Appellant] then grabbed [the victim] by the neck and threw her. [The victim] yelled out to her daughter downstairs to "call for help, call 911, call for help." [The victim] testified that at the time of [Appellant's] entry, she was holding her handgun, which she was about to place in the safe in her room, but put it down on her bed: "I had a gun in my hand. I was getting ready to put it inside of the safe, but he bust the

door down and I put it on the bed." (N.T. 06/09/23 at 7-14; 07/24/23 at 15, 22-23).

[The victim] testified that she ran down the stairs and out the front door. She could not find her phone, so she yelled for her daughter to call for help. [Appellant] then came downstairs and punched her before leaving. [The victim] thereafter reviewed the video footage from her bedroom camera, which showed [Appellant] picking up her gun from the bed and placing it in his waistband before leaving the room. The video depicting the above events was played at trial and submitted into evidence as Exhibit "C-1"; the Commonwealth also introduced a still shot from the video (Exhibit "C-11"), depicting [the victim] holding her gun immediately prior to the attack. (***See*** N.T. 06/09/23 at 11-15; Commonwealth Exhibits "C-1" & "C-11").

[The victim] testified that she reported the above incident to police. On the following day, she went to [Appellant's] home with her newly adopted baby to get her gun and phone back from him. [Appellant's] son let her into the home, where she confronted [Appellant] in the kitchen:

[I said] that's my phone -- I see my phone over there on the counter, and then he grabbed me ... [b]y my hair.

\* \* \*

He dragged me into the living room and he said, bitch, I was going to do you real dirty, real dirty for bitches like you that want to open your mouth. He stuck a gun in my mouth, but the gun was not my gun; it was all silver. He stuck a gun in my mouth. He told me [to] go get the money and pay him for my gun if I wanted the gun back. And I just started screaming and crying.

I just told him okay [and that] I was going to go to the ATM and get him some money. And I had the baby with me, and then I left and went straight to the police station.

(N.T. 06/09/23 at 15-17).

[The victim] testified that she never got her gun back from [Appellant]. She further testified that the gun was operable, having previously used it at the gun range. Finally, [the victim] testified that [Appellant] did not have permission to be inside her home on the day he attacked her. (N.T. 06/09/23 at 17-18).

On cross-examination, defense counsel challenged [the victim's] testimony regarding the timing of the events. More specifically, counsel presented [the victim] with a police report dated November 3, 2021, referencing a "date of occurrence" as "10/31/21." [The victim] explained that she reported the incident immediately to police, but they were short-staffed and the detectives brought her back in a few days later. She testified that she met with three different detectives -- "one female detective" and "two male detectives" -- between the day of the assault and the formal interview. Counsel also questioned [the victim] regarding the timing of the bedroom video, which contained a timestamp of October 26, 2021. [The victim] responded that she believed the timestamp was accurate, explaining that it was a hectic period in her life and she could not recall exact dates: "I was going through so much going back and forth to Pittsburgh to get a child out of the system ... [t]hat is why I can't tell you exact dates." (N.T. 07/24/23 at 7-12).

[The victim] was rehabilitated on re-direct examination as follows:

Q. [] I think the last time we were here we were talking about November 3rd. Do you remember what the actual date was of the first incident?

A. No.

Q. Do you remember when the actual date was of the second?

A. No.

(N.T. 07/24/23 at 20).

Finally, prior to resting, the Commonwealth introduced stipulated evidence that [Appellant] was ineligible to carry a firearm based on a prior conviction. (N.T. 07/24/23 at 20- 21).

For his case-in-chief, [Appellant] took the stand in his own defense. He testified that, prior to the incident, he had been in a relationship with [the victim] for two and one-half years. During that time, he had been to [the victim's] house on numerous occasions, although he never had a key. On the date at issue, at approximately 9:00 or 10:00 p.m., [Appellant] went to [the victim's] house to get his "home aid" paperwork, which contained his personal/ banking information. [Appellant] testified that when he got to the house, he rang the doorbell and [the victim's]

daughter let him in. He went upstairs because he heard [the victim] talking on the phone. [Appellant] admitted to slamming the door into [the victim] because he was angry with her. In [Appellant's] words, "I was upset because she wouldn't give me my paperwork." (N.T. 07/24/23 at 26-31).

[Appellant] testified that when he got into the bedroom, [the victim] was holding a phone in her hand -- which he admitted to taking and leaving the house with, and never returning it to [the victim] [Appellant], however, denied taking a gun from her. According to [Appellant], "[the victim] would no way in the world let me take her gun or throw her." [Appellant] also adamantly denied placing a gun in [the victim's] mouth on the following day:

Q. You heard her describe this second incident the next day or some time after. She alleges she came over to your house where you pointed a gun at her, put a gun in her mouth.

Did anything like that ever happen?

A. Never. Never. My son was there. Her son was there, a baby. I would not do that. Never.

(N.T. 07/24/23 at 30-33).

On cross-examination, [Appellant] admitted that he "never had a key" and was angry with [the victim] on the date in question. He admitted that he had been arguing with her over the paperwork and further admitted that [the victim] did not invite him to her house that night: "No. No. No. I just went down there." [Appellant] also admitted to slamming the door into [the victim], grabbing her by the neck, throwing her out of the way, and taking something from the bed because, "Well, it shows [in the video]." While [Appellant] claimed he only took a phone, he acknowledged that [The victim] did own a gun:

THE COURT: Did you know [the victim] had a gun?

THE WITNESS: Sure. I gave her money to buy them. It was two actually. She never went anywhere without that, you know.

(N.T. 07/24/23 at 34-39).

Following argument by the parties, the [c]ourt found [Appellant] guilty of burglary, simple assault, possession of firearm

prohibited, theft by unlawful taking and RSP.[1]   The [c]ourt acquitted [Appellant] of robbery, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia.

Trial Ct. Op., 4/19/24, at 2-6 (some formatting altered, footnotes omitted).

On October 16, 2023, Appellant was sentenced to an aggregate term of three to eight years' incarceration followed by a term of ten years' probation. Appellant subsequently filed a post-sentence motion challenging the weight and sufficiency of the evidence.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.  The trial court filed a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues for review:

1. Was the evidence insufficient to support Appellant's conviction on the charge of burglary, where the Commonwealth failed to show that he entered the property in question with the specific intent to commit a crime once inside?

2. Did the trial court err and abuse its discretion in denying Appellant's motion for a new trial, where the verdict with respect to the charges of burglary, theft, and violation of Uniform Firearms Act section 6105 was against the weight of the evidence and a new trial was necessary in the interests of justice?

Appellant's Brief at 3.

_____

[1] 18 Pa.C.S. 3502(a)(1)(ii), 2701(a), 6105(a)(1), and 3921(a), respectively.

## Sufficiency of the Evidence

Appellant contends that there was insufficient evidence to sustain his conviction for burglary because there was no evidence to establish that he "meant to commit a crime when he first entered [the victim's] house." ***Id.*** In support, Appellant argues that "neither the manner of Appellant's entry into the house nor his behavior afterwards shed any real light on his state of mind at the time he entered." ***Id.*** at 15. Instead, Appellant asserts that although "[h]is relationship with the complainant may have ended, [] they lived within a few blocks of each other, they were still in contact, and he had a legitimate reason for being there—namely, retrieving personal documents, some of which the complainant had prepared on his behalf." ***Id.*** at 16. Appellant concludes that "[s]ince the only two crimes committed inside the house developed from events that occurred after Appellant was already inside, and since there was no independent evidence of his intent at the time of entry, a basic element of the crime of burglary was lacking, and his conviction on that charge should be vacated." ***Id.*** at 18.

When reviewing a challenge to the sufficiency of the evidence, we are governed by the following standard:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is

to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Wright*, 255 A.3d 542, 552 (Pa. Super. 2021) (citation omitted and formatting altered). "Importantly, the fact finder, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Id.* (citation omitted and formatting altered).

Here, the trial court addressed Appellant's claim as follows:

In order to sustain a conviction of burglary, "the Commonwealth must prove beyond a reasonable doubt the following three elements: (1) entry of a building or occupied structure by a defendant; (2) with the contemporaneous intent on the part of the defendant of committing a crime therein; (3) at a time when the premises are not opened to the public and the defendant was not then licensed or privileged to enter." *Commonwealth v. Gonzalez*, 443 A.2d 301, 304-305 (Pa. Super. 1982). "[A] defendant commits first degree burglary if the location illegally entered: (1) is adapted for overnight accommodation but no individual is present; (2) is not adopted for overnight accommodation but an individual is present; or (3) is adapted for overnight accommodation and an individual is present." *Commonwealth v. Waters*, 988 A.2d 681, 683 (Pa. Super. 2009) (citations omitted). "The Commonwealth may prove its case by circumstantial evidence, and the specific intent to commit

- 7 -

a crime necessary to establish the second element of burglary may thus be found in the defendant's words or conduct, or from the attendant circumstances together with all reasonable inferences therefrom." *Gonzalez*, 443 A.2d at 304-305.

Applying the foregoing, the evidence adduced at trial amply supported [Appellant's] conviction for burglary. [Appellant] entered his ex-girlfriend's residence amidst an ongoing feud, ran up her stairs to the second floor, and barged into her bedroom, striking her with the door. If [Appellant] did not have an intent to assault [the victim] at the time he entered her home, he would not have proceeded to physically assault her after striking her with the door. While [the victim's] testimony alone was enough to sustain [Appellant's] conviction, in this case, we have video evidence clearly depicting [Appellant's] violent actions.

Further, [Appellant] himself admitted that he was angry with [the victim] at the time, had been arguing with her over paperwork, and she did not invite him to her house on the night of the assault -- rather, he "just went down there" in an admittedly angry state. Viewing all the evidence in the light most favorable to the verdict winner, including [Appellant's] conduct caught on video and all the attendant circumstances, the evidence plainly supported an intent to commit a crime at the time of entry. *See Gonzalez*, 443 A.2d at 304-305. ("[T]he specific intent to commit a crime necessary to establish the second element of burglary may thus be found in the defendant's words or conduct, or from the attendant circumstances together with all reasonable inferences therefrom."). As such, the evidence was sufficient to sustain [Appellant's] burglary conviction.

Trial Ct. Op. at 8-10 (some formatting altered).

Following our review of the record, and in viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that there was sufficient evidence to support Appellant's conviction. *See Wright*, 255 A.3d at 553. The trial court thoroughly addressed the sufficiency of the evidence supporting Appellant's conviction and concluded that he was not

entitled to relief. Therefore, we affirm based on the trial court's analysis of this issue. *See* Trial Ct. Op. at 8-10.

## Weight of the Evidence

Appellant also challenges the weight of the evidence. Appellant's Brief at 18. Appellant acknowledges that "a witness may lie or be mistaken about some facts while being truthful and accurate in other areas, and a fact-finder is broadly permitted to accept a witness's testimony as to some matters while rejecting it on others." *Id.* However, Appellant notes that the trial court concluded that the victim, who was "the sole witness to essential facts supporting all but one charge, had fabricated an entire, separate, substantially more serious incident." *Id.* at 19 (emphasis omitted). Therefore, Appellant claims that the trial court's "conclusion skewed the weight of the evidence overwhelmingly against the Commonwealth, and the trial court erred in denying a new trial." *Id.*

When reviewing the denial of a motion for a new trial based on weight of the evidence, we are governed by the following standard of review:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a

review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Windslowe***, 158 A.3d 698, 712 (Pa. Super. 2017)

(citations omitted). As this Court has repeatedly stated,

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.
>
> \* \* \*
>
> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Spence***, 290 A.3d 301, 311 (Pa. Super. 2023) (citations

omitted and formatting altered).

> Here, the trial court explained:
>
> [H]aving presided as the trier of fact, this court had a firsthand opportunity to observe the demeanor of the witnesses and assess their credibility. Further, having twice carefully reviewed the record by virtue of [Appellant's] post-sentence motion and the instant appeal, the [c]ourt is confident that its verdict was soundly supported by the weight of the evidence. The [c]ourt found the testimony of [the victim] to be candid, detailed and corroborated

by all the other evidence. Indeed, in addition to being corroborated by the Police Incident Report in which [the victim] provides the make, model and serial number of the firearm that [Appellant] had just taken from her bedroom, [the victim's] testimony was corroborated by the video evidence, depicting [Appellant] violently barging into her bedroom before assaulting her and taking her handgun.

Conversely, [Appellant's] testimony that he "only" took [the victim's] phone, was refuted by the video evidence, in addition to common sense. Indeed, the video showed [Appellant] retrieving [the victim's] firearm from her bed and placing it in his waistband. In that regard, it is a matter of common sense that people do not place phones in their waistband, they place guns in their waistband.

Finally, the court anticipates that [Appellant] will argue, as he did in his post-sentence motion, that [the victim's] testimony was not credible in its entirety because the court acquitted [Appellant] of the gun-in-mouth robbery. More specifically, [Appellant] argued that since the court "explained that it did not believe that that incident happened at all," [the victim] "had credibility issues ... suggest[ing] that the guilty verdict was against the weight of the evidence." ([Appellant's] Post-Sentence Motion at 6). This argument is unavailing for a number of reasons.

First and foremost, the video evidence combined with all the other testimony, documentary evidence and attendant circumstances, clearly established that the verdict was supported by the weight of the evidence. Second, [Appellant] fails to recognize that this [c]ourt, sitting as factfinder, was free to believe all, part, or none of [the victim's] testimony. Third, that the court acquitted [Appellant] of robbery (and two other felonies) does not discredit other credible, competent evidence of his guilt; rather, it reflects that the court was an impartial and fair arbiter.

In sum, the court carefully assessed and accorded weight to the evidence presented on a firsthand basis; that, on balance, the scales were tipped against [Appellant] as to some but not all of the charges hardly amounts to court error. Stated differently, there was nothing shocking about the verdict; rather, [Appellant] benefitted by the reasonableness and impartiality of the court. Accordingly, [Appellant's] weight of the evidence claim is without merit.

Trial Ct. Op. at 11-12 (some formatting altered).

Based on our review of the record, we discern no abuse of discretion by the trial court in denying Appellant's weight claim. **See Windslowe**, 158 A.3d at 712. The trial court was free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. **See Spence**, 290 A.3d at 311. Although Appellant claims that the victim's testimony was not credible, we cannot substitute our judgment for that of the trier of fact in that the trial court's determinations are amply supported by the record. **See Spence**, 290 A.3d at 311. Therefore, Appellant is not entitled to relief on his weight-of-the-evidence claim.

For these reasons, Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/9/2025