J-S22045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAYON WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1249 WDA 2023 |

Appeal from the Judgment of Sentence Entered July 10, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008740-2022

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: AUGUST 8, 2024**

Rayon Williams ("Appellant") appeals from the judgment of sentence imposed following her conviction of one count of carrying a firearm without a license (18 Pa.C.S. § 6106(a)(1)). Appellant claims that the Commonwealth failed to prove beyond a reasonable doubt that she constructively possessed the firearm that was found inside a bag of food in the backseat of the vehicle where Appellant was sitting. After careful review, we reverse Appellant's judgment of sentence.

The facts of this case are not lengthy, and the trial court set them forth in the opinion prepared pursuant to Pa.R.A.P. 1925(a) as follows:

> On August 14, 2022[,] at or around 1:30 a.m., Office[r] Luke Dunlevy, a patrolman for the city of McKeesport, conducted a traffic stop. At trial, Office[r] Dunlevy testified that there were three occupants in the vehicle, two males in the front driver and passenger seats and [Appellant] seated in the rear driver's side seat. After the arrival of Officer Joshua Alfer and Officer Ross Weimer, Office[r] Alfer observed a firearm in the waist band of the

front seat passenger. Subsequently, the occupants of the vehicle were removed. Once the occupants were asked to exit the vehicle[,] Officer Weimer observed [Appellant] having a baggie with marijuana protruding from her pocket. After all three occupants of the vehicle were taken into custody, an inventory search of the vehicle was conducted. It was discovered that a convenience store bag on the rear seat contained food and a firearm. The firearm was inspected and determined to be loaded and operable. Officer Dunlevy charged [Appellant], the sole rear seat passenger, given that she did not have a license to carry a firearm, with [an offense pursuant to] 18 [Pa.C.S.] § 6106(a)(1).

Trial Court Opinion (TCO), 1/8/24, at unnumbered 1-2.

Appellant was charged with one count each of carrying a firearm without a license (18 Pa.C.S. § 6106(a)(1)) and disorderly conduct (18 Pa.C.S. § 5503(a)(4)). On April 19, 2023, Appellant appeared for a bench trial. The trial court convicted Appellant of the firearms charge and found her not guilty of the summary offense. *See* Sentencing Order, 7/10/23. Following a hearing, Appellant was sentenced to a term of five years of probation, with the first two years being on electronic monitoring. *Id.* Appellant's trial counsel filed a timely post-sentence motion as well as a motion to withdraw as counsel on July 10, 2023. New appellate counsel was granted permission to amend the post-sentence motion; the amended motion was filed on September 18, 2023. The motion was denied the next day. Order, 9/19/23. Appellant then filed a timely notice of appeal on October 17, 2023. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following question for our review:

Was the evidence insufficient to sustain the conviction for [c]arrying a [f]irearm [w]ithout a [l]icense insofar as the Commonwealth failed to prove beyond a reasonable doubt that

- 2 -

[Appellant] constructively possessed the firearm that was found inside a bag of food in the backseat of the vehicle where [Appellant] was sitting?

Appellant's Brief at 4 (emphasis omitted).

Appellant argues that the trial evidence was insufficient to establish that she had constructive possession of the firearm. To begin, we note that a challenge to the sufficiency of the evidence is a question of law, which mandates that our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018). Moreover,

[i]n reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno*, *supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

Appellant was convicted of carrying a firearm without a license, which is defined in our Crimes Code as follows:

**(a) Offense defined.**

(1) … [A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1). The Crimes Code further defines "possession" as being established "if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." 18 Pa.C.S. § 301(c).

Possession may be proven by establishing actual possession, constructive possession, or joint constructive possession. *Parrish*, 191 A.3d at 36. Constructive possession is a legal fiction, a pragmatic construct which has been created to deal with the realities of criminal law enforcement. *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013). "Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction." *Commonwealth v. Wright*, 255 A.3d 542, 553 (Pa. Super. 2021) (citing *Hopkins*, *supra*). Constructive possession is defined as "conscious dominion," meaning that it occurs when a defendant has both the power to control the contraband and the intent to exercise that control. *Hopkins*, 67 A.3d at 820.

Moreover, it is well-settled that constructive possession may be established through the use of circumstantial evidence, just like any other element of a crime. *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996). "In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue." *Parrish*, 191 A.3d at 37.

- 4 -

Appellant argues that her "mere presence in the vehicle in which two other individuals were present did not constitute legally sufficient evidence that [Appellant] had knowledge of the firearm and intent to control it." Appellant's Brief at 11. We note that the paradigm of constructive possession "usually comes into play when police find contraband somewhere other than on the defendant's person." *Commonwealth v. Hall*, 199 A.3d 954, 961 (Pa. Super. 2018). Critically, while constructive possession may be proven by circumstantial evidence, "[c]onstructive possession requires proof that the defendant had knowledge of the existence and location of the item." *Id.* "The evidence must show a nexus between the accused and the item sufficient to infer that the accused had the power and intent to exercise dominion and control over it." *Commonwealth v. Peters*, 218 A.3d 1206, 1209 (Pa. 2019).

Appellant is correct to point out that "a defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items." *Wright*, 255 A.3d at 553. "Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt. Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession." *Parrish*, 191 A.3d at 37 (citations omitted). More importantly:

> **If the only inference that the fact finder can make from the facts is a *suspicion* of possession, the Commonwealth has**

> **failed to prove constructive possession.** It is well settled that facts giving rise to mere 'association,' 'suspicion' or 'conjecture,' will not make out a case of constructive possession.

*Id.* (emphasis added).

We find the reasoning of *Parrish* to be apt here. There, officers initiated a traffic stop for a window-tint violation; Parrish was seated in the rear seat on the driver's side of the automobile. *Id.* at 32. Officers noted as they approached the stopped car that it appeared to be rocking back and forth. *Id.* Looking inside the car, officers found two occupants: the driver, who, when the officers approached, was straddling the center console between the two front seats, and Parrish, who was seated behind the driver's seat with his hands on the headrest of the driver's seat. *Id.* at 33. Officers arrested both occupants of the car and then searched the vehicle. *Id.*

The search revealed a black bag containing drugs, drug paraphernalia, and a gun in the front seat. *Id.* A second gun was found stashed under the front passenger seat and loose marijuana was seen in a cup holder on the front passenger-side door. *Id.* Parrish was charged with violating, *inter alia*, Section 6106(a)(1). *Id.*

Notably, Parrish was cooperative with police during the search and did not attempt to flee. *Id.* at 34. At trial, the Commonwealth's expert explained that because two guns were found in the vehicle (regardless of where in the vehicle they were found), and there were two suspects present, he concluded that each individual had possessed one of the guns. *Id.* The expert further

testified that he did not remember ever stopping a car and finding one person possessing more than one handgun. *Id*.

Parrish also presented testimony from a friend who stated that he had been with Parrish at a party on the night in question, and had arranged for Parrish to get a ride home. *Id.* This witness put Parrish into the car in question and noticed that he did not have a satchel or any kind of bag with him at the time. *Id.* Moreover, the witness testified that Parrish was lying down on the back seat of the car when it left the party. *Id.*

After his conviction on all counts, Parrish challenged the finding that he had constructive possession of the gun, drugs, and paraphernalia from the front seat. Parrish pointed out that he was found in the back seat, and the contraband was only accessible from the front of the car. *Id.* at 37. Moreover, Parrish established that he did not bring any bags into the car, he did not have keys to the car, and he was not the owner or operator of the car. *Id.* at 37-38. There was no testimony or other evidence that Parrish had ever been in either of the front seats of this particular car. *Id.* at 38. There were no fingerprints connecting him to the handguns, nor were the weapons registered in his name. *Id.* On appeal, this Court reversed his convictions. With respect to the black bag, we opined:

> Following our review of the evidence, we fail to see how the jury could reasonably infer that [Parrish] had knowledge of the contraband in the black bag located in the front row of the vehicle, let alone exercise dominion and control over its contents. The only evidence presented regarding the black bag in the vehicle was its location and that [Parrish] did not carry a black bag into

- 7 -

the vehicle. From this, it is not reasonable for the jury to conclude that [Parrish] knew about the contents of the black bag and exercised dominion and control over it.

*Id.* In addition, we determined that it was unreasonable to conclude that Parrish, sitting in the back seat, had dominion and control over the gun under the passenger-side front seat and the marijuana on the front passenger-side door. *Id.* We concluded: "Notwithstanding [the detective's expert] opinion that, in his experience, the presence of two firearms generally indicated that each occupant possessed a gun, we cannot agree that this evidence is sufficient for a factfinder to conclude that [Parrish] possessed the firearm in this case." *Id.*

In evaluating the sufficiency of the evidence admitted in the present case, we first turn to the trial court's analysis. The trial court, sitting as the factfinder in this matter, stated the following when announcing the verdict in this case:

> All right. So I have considered the testimony of the witnesses, the relevant exhibits and the arguments of counsel. And I do find it is a constructive possession case.
>
> However, I do find that, considering the totality of the circumstances, I believe that the weapon was – that [Appellant] had knowledge of and dominion and control of the weapon, and it was within her wing span.
>
> So at CC 8740 of 2022, at Count 1, I find you guilty.

N.T., 4/19/23, at 39-40. The analysis in the trial court's opinion is no more expansive:

> Based on the totality of the facts presented, the evidence was sufficient to have the fact finder conclude beyond a reasonable

doubt that [Appellant] had violated 18 [Pa.C.S.] § 6106(a)(1) and therefore, [Appellant] was found guilty.

TCO at unnumbered 3-4.

This analysis is unpersuasive. The critical issue in a constructive possession case is not limited to considering whether an item is within an individual's wingspan. Rather, the analysis must center on whether the individual had both conscious dominion over the item and an intent to exercise that dominion and control over that item. *Peters*, *supra*; *Parrish*, *supra*.

Here, the vehicle in which Appellant sat was pulled over for a turn signal violation and the improper display of a temporary registration tag. N.T., 4/19/23, at 9. The officer who initiated the stop testified that he saw three occupants of this vehicle: the driver, the front-seat passenger, and Appellant. *Id.* The vehicle pulled over appropriately in response to the officer's signaling to do so. *Id.* The officer specifically noted that he did not observe anyone inside the vehicle moving around. *Id.* at 10, 12. When another officer removed Appellant from the vehicle, he saw a baggie with a small amount of marijuana inside Appellant's front hoodie pocket. *Id.* at 19.[1] Appellant did not have a gun, ammunition, or a holster for a weapon with her at the time of the search. *Id.* at 20. The car registration was in the driver's name, not Appellant's. *Id.* at 30.

_____

[1] Appellant was not charged with possession of marijuana.

Further, the weapon which serves as the basis for Appellant's conviction was discovered only after the vehicle was towed and police performed an inventory search. *Id.* at 22. Officer Dunlevy explained what was found during the search: "In the passenger's side of the – the rear passenger seat, there was a [G]etGo[2] bag with food inside. And inside that bag was also a firearm." *Id.* at 22-23. Officer Dunlevy noted that the bag was not directly located next to Appellant's body, but was in the middle of the seat next to where Appellant was sitting. *Id.* at 30. The bag was "standing up and down" in the seat, meaning that the interior of the bag was only visible when looking down directly into the bag; it could not be seen from a side view. *Id.* Thus, Appellant would not have seen the contents from her seat without specifically looking inside.

Further, Officer Dunlevy noted that the bag was on the rear seat directly behind the front seat passenger who had a firearm on him at his arrest. *Id.* at 31. Both the weapon from the GetGo bag and the weapon on the front-seat passenger were so-called "ghost guns,"[3] and both were of the same

---

[2] "GetGo" is a reference to gasoline stations associated with Giant Eagle Supermarkets in the Pittsburgh area.

[3] Another witness defined the term "ghost gun" as referring to one made with "Polymer P-90[,]" which has no identifying marks on it. N.T., 4/19/23, at 16. ***See also*** Annie Karni, *Ghost Guns: What They Are, and Why They Are an Issue Now*, N.Y. TIMES (Apr. 9, 2021), https://www.nytimes.com/2021/04/09/us/politics/ghost-guns-explainer.html
*(Footnote Continued Next Page)*

caliber. *Id.*[4] Officers did not remember checking a receipt in the bag for the food for any identifying information as to the purchaser; this information could have established who purchased the food, which could have then created an inference of who owned the weapon found in the same bag. *Id.* The guns were tested for fingerprints and DNA, to no avail. *Id.* No indicia related to Appellant was found in the bag. *Id.* at 32. Officers did not testify about asking Appellant if the GetGo bag was hers, or indeed having any discussion with Appellant at all.

After considering the totality of the evidence presented, even in the light most favorable to the Commonwealth as the verdict winner, we cannot say that constructive possession was proven in this case. There was zero evidence presented connecting Appellant to the GetGo bag other than the fact that both were found in the back seat of the car. Appellant certainly never admitted to ownership of the bag or its contents; we do not know on this record whether she was ever even asked any questions by law enforcement about the bag.

_____

(explaining that ghost guns are "firearms that are assembled from kits and do not carry serial numbers").

[4] The Commonwealth advances a similar rationale as the expert in *Parrish*, suggesting that the front seat passenger's possession of a ghost gun like the one in the GetGo bag actually makes it *less* likely that the similar gun in the back seat also belonged to him. Commonwealth's Brief at 15 n. 8. *See also* N.T., 4/19/23, at 38 (the Commonwealth's arguing, "[W]e do have another passenger with a gun on his person, but he already has the gun on his person, so … a reasonable inference is that this gun belongs to one of the other two people.").

There was no movement in the car prior to the stop, indicating that Appellant was unaware that she was sitting next to contraband. Testimony showed that Appellant would not have known of the contents of the bag from her seat. The Commonwealth has baldly asserted that ownership of the rear-seat firearm cannot be imputed to the man in the front seat because he already had a ghost gun, which is a faulty inference. There is absolutely no proof, let alone proof beyond a reasonable doubt, that Appellant had knowledge of the gun inside the GetGo bag. Such is required for constructive possession. *Parrish*, *supra*.

Moreover, along with the lack of proof that Appellant knew of the weapon in the bag, the Commonwealth failed to establish that she intended to exercise dominion and control of the items within the bag. A specific intent to use the weapon was not even alleged. After review, we determine that the only evidence supporting the conclusion that Appellant constructively possessed the firearm was that it had been placed on the seat next to her in the rear of the car. Yet, as we noted previously, mere presence at a place where contraband is found is insufficient to prove dominion and control over that contraband. *Wright*, *supra*. Accordingly, we conclude that the evidence was insufficient to support Appellant's conviction in this case.

Judgment of sentence reversed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/8/2024