J-A28036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EVERETT JAMES CLAYTON | : | |
| | : | |
| Appellant | : | No. 804 EDA 2024 |

Appeal from the Judgment Entered January 26, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000257-2023

BEFORE: PANELLA, P.J.E., STABILE, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED APRIL 22, 2025**

Appellant Everett James Clayton appeals from the judgment of sentence imposed after a jury convicted him of one count of third-degree murder and one count of third-degree murder of an unborn child.[1] Appellant argues that the evidence was insufficient to sustain his convictions and presents a challenge to the discretionary aspects of his sentence. We affirm.

The relevant facts and procedural history of this matter are well known to the parties. *See* Trial Ct. Op., 4/12/24, at 1-15. We conclude that the trial court's thorough recitation of the facts is supported by the record, and we adopt them as our own. *See id.*[2] Briefly, on August 25, 2022, at

_____

[1] 18 Pa.C.S. §§ 2502(c), and 2604(c)(1) respectively.

[2] Because we adopt the trial court's factual findings as our own and incorporate them into our disposition, the parties are directed to attach a copy of the trial court's opinion in the event of further proceedings.

approximately 3:00 P.M., Appellant was driving an unregistered 18,000-pound dump truck without a license at a high rate of speed on a curvy road with which he was not familiar, and he collided head-on with a Chevrolet Tahoe driven by Kellie Adams. ***See id.*** at 1. The collision killed Ms. Adams and her unborn child. ***See id.***

> Additionally, [Ms. Adams's] vehicle was so devastated by the impact that the dashboard was crushed nearly to the ceiling of the vehicle. [Ms. Adams was] so entrapped inside her vehicle she could not even be seen. [Further, t]here was evidence presented that Appellant had been drinking, and his blood draw about an hour after the crash was 0.076 BAC. Expert testimony established that despite the fact this was below the legal limit in Pennsylvania, Appellant's driving abilities would have been impaired. Additional expert testimony established that Appellant's admitted drinking prior to the crash violated federal regulations pertaining to vehicles such as the one he was driving.

***Id.*** at 1-2.

> The trial court further stated:

> Sergeant [Ryan] Singleton [of the Lower Providence Police Department] explained that Federal motor carrier regulations prohibit the use of alcohol, pre- trip, on duty and post- trip. [N.T, Trial, Vol. 2, 10/24/23,] at 17.[3] As to pre-trip time period, the regulations prohibit the driver from consuming alcohol within 4 hours of operating a vehicle. ***Id.*** at 18. The sergeant noted that Appellant's consumption of alcohol was recorded as .076 BAC, and that under federal regulations he is not permitted to have consumed alcohol within 4 hours of operating a commercial vehicle. ***Id.*** at 33-34. Federal motor carrier regulations require a driver to make sure he is properly licensed, has proper endorsements, has a medical card, and conducts a pre-trip

---

[3] The trial court noted that by Appellant's own account he drank beer at noon. ***See*** Trial Ct. Op., 4/12/24, at 20; ***see also*** N.T., Trial, 10/23/23, at 106.

inspection. *Id.* Appellant could not produce a driver's license. *Id.* at 20.

In terms of Pennsylvania motor vehicle violations, [] Sergeant Singleton testified that a driver is responsible to make sure he is properly licensed and that the vehicle is insured, registered, and inspected. *Id.* at 21. Appellant's vehicle had none of the above. *Id.* It was not insured, it was not registered, and it was not inspected. *Id.* at 21-22. The registration had expired, the last registration for the vehicle shows that it was registered to another business, not the one defendant was working for, and there was no certificate of inspection. *Id.* at 22. It did display an expired [New Jersey] inspection sticker, which was irrelevant because it was several years old and not registered in [New Jersey]. *Id.* at 21-22.

*Id.* at 10-11.

The record also reflects that Sergeant Matthew Kuhnert of the Lower Providence Township Police Department testified that at the scene of the accident, Appellant was walking around, smoking cigarettes, and taking pictures, but he showed no signs of remorse. *See* N.T. Trial, 10/23/23, at 52–53. After the crash, Appellant did not inquire about the condition of the victim. *See id.* at 127. Sergeant Singleton testified that before the curve where the crash occurred, there is a large yellow sign warning of the sharp curve and warning drivers to slow to 25 miles per hour. *See* N.T. Trial, 10/24/23, at 25. Further, the record reflects that Appellant was travelling at a high rate of speed. *See id.* at 144.

Appellant was charged with one count of third-degree murder and one count of third-degree murder of an unborn child. *See* Crim. Information, 2/2/23. Appellant was also charged with homicide by vehicle, careless driving/unintentional death, careless driving, reckless driving, failure to keep

right, disregarding traffic lane, disregarding traffic control device, operating vehicle without required financial responsibility, driving unregistered vehicle, operating vehicle without a valid inspection, violation of vehicle equipment standards/brakes, driving at safe speed, and three counts of operating with unsafe equipment.[4]  **See id.**  All charges except for third-degree murder and third-degree murder of an unborn child were *nolle prossed* prior to trial.  **See** Verdict Sheet, 10/25/23.  Ultimately, as noted above, the jury found Appellant guilty of one count of third-degree murder and one count of third-degree murder of an unborn child.  **See id.**

On January 26, 2024, the trial court sentenced Appellant to a term of twelve and one-half to twenty-five years of incarceration for third-degree murder, and a consecutive term of  twelve and one-half to twenty-five years of incarceration for third-degree murder of an unborn child.  **See** Sentencing Order, 1/26/24; N.T. Sentencing, 1/26/24, at 69-70.  This resulted in an aggregate sentence of twenty-five to fifty years of incarceration.[5]  **See id.**

---

[4] 75 Pa.C.S. §§ 3732(a), 3714(b), 3714(a), 3736(a), 3301(a), 3309(1), 3111(a), 1786(f), 1301(a), 4703(a), 4107(b)(2.1), 3361, and 4107(b)(2), respectively.

[5] The record indicates that Appellant had a prior record score of 2 with offense gravity scores of 14 on both counts.  **See** N.T., 1/16/24, at 3.  The standard-range minimum sentence for each count was between eight and twenty years, and the trial court imposed a minimum sentence on each count of twelve and one-half years.  **See id.** at 69-70; 204 Pa.Code § 303.16(a).  Accordingly, the trial court imposed sentences in the standard range of the sentencing guidelines for both crimes.  **See** N.T., 1/16/24, at 3, 69-70; **see also** 204 Pa.Code § 303.16(a).

Appellant filed a timely post-sentence motion challenging the sufficiency of the evidence to prove the malice element for third-degree murder and third-degree murder of an unborn child, and Appellant also alleged that his "sentence is an abuse of the [trial c]ourt's discretion." Post Sent. Mot., 2/1/24. The trial court denied Appellant's post sentence motions, and Appellant filed a timely appeal. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues:

1. Whether the evidence at trial was sufficient to convict . . . Appellant of two counts of third-degree murder.

2. Whether the sentencing court abused its discretion in sentencing [Appellant] to 25 to 50 years [of] incarceration.

Appellant's Brief at 6 (some formatting altered).

### Sufficiency

In his first issue, Appellant challenges the sufficiency of the evidence. *See* Appellant's Brief at 31-32. Specifically, Appellant contends that the Commonwealth failed to prove the "malice" element necessary to sustain convictions for third-degree murder and third-degree murder of an unborn child. *See id.* at 32-34. Appellant argues that "in the vast majority of prosecutions involving deaths or injuries caused by defendants driving under the influence, third degree murder . . . should not be charged." *Id.* at 33-34. Appellant contends that driving under the influence, standing alone, is not sufficient to prove malice. *See id.*

In response, the Commonwealth acknowledges that generally, driving while under the influence of alcohol or a controlled substance does not, by itself, constitute malice. **See** Commonwealth's Brief at 15-17. However, the Commonwealth asserts that malice may be inferred based on the totality of the circumstances, and therefore, Appellant's behavior before, during, and after the crash must be considered. **See id.** at 17. The Commonwealth contends that in this case, there was sufficient evidence of malice. The Commonwealth notes that Appellant had time to reflect on his actions and decisions, and he chose to operate an unsafe dump truck on an unfamiliar winding road. Further, Appellant did not have a license, he consumed alcohol and drove an 18,000-pound dump truck, which was not registered and could not be operated lawfully on Pennsylvania roadways. In addition, while Appellant was driving, he ignored posted speed limits, cautionary road signs, and nearly struck a truck by following it too closely, prior to the fatal crash. **See id.** at 17-23. The Commonwealth argues that based on a totality of the circumstances, when all factors are considered, there was sufficient evidence of malice. **See id.** at 24.

When reviewing a challenge to the sufficiency of the evidence, we are governed by the following standard:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless,

the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Wright*, 255 A.3d 542, 552 (Pa. Super. 2021) (citation omitted and formatting altered). "Importantly, the fact finder, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Id.* (citation omitted and formatting altered).

Third-degree murder is defined as "all other kinds of murder" other than first-degree or second-degree murder. 18 Pa.C.S. § 2502(c). Similarly, third-degree murder of an unborn child, is "[a]ll other kinds of murder of an unborn child" that are not first and second-degree murder of an unborn child. 18 Pa.C.S. § 2604(c)(1).

To convict a defendant of third-degree murder, the Commonwealth must prove "the killing of an individual with malice." *Commonwealth v. Jones*, 271 A.3d 452, 458 (Pa. Super. 2021) (citations omitted). Malice is defined as "exhibiting an 'extreme indifference to human life.'"

*Commonwealth v. Ludwig*, 874 A.2d 623, 632 (Pa. 2005) (citation and emphasis omitted). Malice includes "not only particular ill will toward the victim, but also wickedness of disposition, hardness of heart, wantonness, and cruelty, recklessness of consequences, and conscious disregard by the defendant of an unjustified and extremely high risk that his actions may cause serious bodily harm." *Jones*, 271 A.3d at 458 (citations omitted). The mental state of malice thus exceeds that of "ordinary recklessness." *Commonwealth v. Packer*, 168 A.3d 161, 169 (Pa. 2017).

> The quintessential example of the level of recklessness required to constitute malice is a defendant who shoots a gun into a crowd. If a man fires a gun into a crowd and kills another it is murder, because the fact of the reckless shooting of a gun into a crowd is malice in law. That wicked and depraved disposition and that recklessness and disregard of human life is malice.

*Id.* (citation omitted and formatting altered). Therefore, third-degree murder "is a homicide that the Commonwealth must prove was committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a specific intent to kill." *Commonwealth v. Fisher*, 80 A.3d 1186, 1191 (Pa. 2013) (citations omitted).

The decision to drive while under the influence does not, standing alone, constitute malice. *Commonwealth v. Peters*, 320 A.3d 1231, 1236 (Pa. Super. 2024) (citing *Packer*, 168 A.3d at 170). However, malice may be proven when additional factors are found, and "[m]alice may be inferred by considering the totality of the circumstances." *Id.* at 1239 (emphasis omitted)

(quoting *Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa. Super. 2011)).

In *Dunphy*, a panel of this Court concluded that the totality of the circumstances proved malice and upheld a conviction for third-degree murder. Specifically, the *Dunphy* Court explained:

> Considering the totality of the circumstances, we find that the evidence was sufficient to prove that Appellant had the requisite malice to support a conviction for third degree murder. The intoxicated condition of [the a]ppellant, the excessive rate of speed he was traveling on a street where pedestrians were present, [the a]ppellant's admission that although he saw pedestrians in front of him, he speeded up to make the light, the distance [the victim's] body traveled upon impact, the absence of any testimony that there was a physical or climatic condition that would explain his failure to stop before or after the accident, and [the a]ppellant's flight after hitting [the victim][FN3] demonstrate a complete disregard of the unjustified and extremely high risk that his actions would cause death or serious bodily injury. The evidence supports a finding of malice.
>
> > [FN3] "[A]ctions taken after [an] accident might possibly reflect upon [the a]ppellant's state of mind prior to the accident." *Commonwealth v. McHale*, 858 A.2d 1209, 1217 (Pa. Super. 2004). . . .

*Dunphy*, 20 A.3d at 1219-20.

In *Commonwealth v. Pigg*, 571 A.2d 438, 442 (Pa. Super. 1990), a panel of this Court considered the type of vehicle that the defendant operated as a factor when determining malice. The *Pigg* Court explained:

> Moreover, whether malice can be inferred from the use of the tractor trailer is dependent upon the circumstances of this case. We find that Pigg's operation of an eighteen-wheeled tractor trailer down a narrow road while in an intoxicated state is analogous to the boxer's use of his fists in [*Commonwealth v.*] *Dorazio*[, 74 A.2d 125 (Pa. 1950)], and is therefore sufficient to

give rise to an inference of malice. Prior to the fatal accident, Pigg drove several other vehicles off the road and ignored a fellow driver's plea to stop driving. On these facts, there can be no question that Pigg knew the danger he posed to others, yet [he] willfully pursued a course of conduct that continued to subject them to that danger. As was stated by the trial court:

> [Pigg] drunkenly drove [a]n instrumentality that would have made ravaging Vikings green with envy. No battering ram in ancient history could match the lethality or destructive force of a large truck on a relatively narrow road. His wake was filled with incidental flotsam pointing to a stubborn persistence to get down the road whatever the consequences. There were no weather or traffic conditions, nothing which required [Pigg] to continue driving, to explain the tragedy.

Accordingly, we find that the evidence of Pigg's conduct was sufficient to demonstrate the wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty that constitute the requisite element of malice. Therefore, the evidence was sufficient to sustain the two third-degree murder convictions.

**Pigg**, 571 A.2d at 442–43 (some citations omitted).[6]

Here, the trial court addressed this issue as follows:

In this case, the evidence established that Appellant did not have a valid driver's license, and the truck was not inspected or registered. By Appellant's account, he drank a beer at noon, in violation of federal regulations and got behind the wheel of an 18,000 plus pound truck. There were additional beers in the vehicle, including two full cans and an empty can of beer and an open container containing beer. There was testimony that for Appellant to have had a BAC level of 0.076 about an hour after the crash, it was not credible that Appellant last drank beer at

---

[6] In the cases cited by Appellant for the proposition that driving under the influence, standing alone, does not establish malice, there is no indication that the drivers in those cases were operating large commercial vehicles. **See** Appellant's Brief at 33-35 (citing **Commonwealth v. Packer**, 168 A.3d 161 (Pa. 2017); **Commonwealth v. O'Hanlon**, 653 A.2d 616 (Pa. 1995); and **Commonwealth v. McHale**, 858 A.2d 1209 (Pa. Super. 2004)).

noon. Additionally, expert testimony established that at 0.076 BAC, Appellant was in the euphoria stage of intoxication, and that he would have impaired driving, despite being below the legal Pennsylvania limit. Despite this Appellant got behind the wheel of this 18,000 pound vehicle.

Appellant's own video evidence showed that he drove through Montgomery Count[y] speeding for about 20 minutes prior to the crash, sometimes going 20 miles per hour over the speed limit. He went into the curve with a designated 25 miles per hour limit at over twice that speed. There was expert testimony that the high rate of speed combined with the heavy weight of the truck cause[d] a devastating head-on collision. The force of the impact was so substantial, the bolts holding the dump body from the chassis were sheared off, and the victim was crushed in her vehicle wherein her dashboard nearly was pushed inward to the interior ceiling. She wasn't even visible to the first responders. Appellant drove his 18,000 pound truck and consciously disregarded the possibility that he could cause death or serious bodily injury to someone. This constituted extreme indifference to the value of human life. . . .

Trial Ct. Op., 4/12/24, at 20-21.

Here, as in *Pigg*, a critical factor is the unwieldy size of the 18,000-pound unregistered dump truck Appellant was operating at times, 20 miles per hour above the speed limit while intoxicated. *See Pigg*, 571 A.2d at 442–43 (upholding a finding of malice and a conviction for third-degree murder where the appellant was operating an 18-wheeled truck). *See* Trial Ct. Op., 4/12/24, at 1.

We understand that driving while intoxicated by itself does not typically constitute malice. *See Peters*, 320 A.3d at 1236; *Packer*, 168 A.3d at 170. However, after review, we conclude that that this case is distinguishable based on multiple factors. The record reflects that in addition to drinking alcohol, Appellant was not properly licensed to drive a commercial vehicle, that the

vehicle was not registered, inspected, or insured. *See* N.T. Trial, 10/24/23, at 17-34. Further, Appellant consumed alcohol and drove an 18,000-pound dump truck, and this truck could not be lawfully driven on Pennsylvania roads. *See id.* Appellant navigated an unfamiliar, winding road, exceeding the speed limit and disregarding cautionary signs warning of sharp curves and advising drivers to reduce speed to 25 miles per hour. *See id.* at 25. In the course of his dangerous driving, Appellant collided head-on with Ms. Adams' vehicle, causing the dump bed of the truck to completely detach, and the collision killed Ms. Adams and her unborn child. *See id.* at 79-80; N.T. Trial, 10/23/23, at 31. Further, after the crash, Appellant exited the truck with his beer, phone, and cigarettes, and at no point did Appellant inquire about Ms. Adams, demonstrating his indifference to the value of human life. *See* N.T. Trial, 10/23/23, at 52; 127.

The trial court specifically noted the horrific nature of the crash, Appellant's actions prior to the crash, and that Appellant showed no indication of remorse after the crash. *See* Trial Ct. Op., 4/12/24, at 4. The trial court explained:

> Officer Ryan Gill of the Lower Providence Township Police Department made contact with Appellant, believing he was involved in the accident since he observed him to have some fresh injuries. Appellant admitted that he was involved in the accident, and that he was the driver of the [dump] truck. Officer Gill was surprised by Appellant's calm demeanor given the horrific nature of the accident. Appellant had a grocery bag with him, and when the officer later took inventory of that bag he in relevant part found two cans of beer, and empty can of beer, and a Gatorade bottle partially filled with what Appellant identified as beer.

Appellant agreed to a blood draw. Blood was collected at 3:51 p.m. Afterwards, Appellant agreed to be transported to the police station to give a voluntary statement. Appellant's demeanor throughout was calm.

Sergeant Michael Higgins of the Lower Providence Township Police Department, met Appellant at the police station around 5:00 p.m. Appellant's demeanor was non-concerned, unaffected, and matter of fact.

*Id.* (some formatting altered).

The trial court further explained:

Dr. Khalil Wardak, a forensic medical examiner, conducted the autopsy on [Ms. Adams] and her unborn baby. Dr. Wardak testified that [Ms. Adams] was third trimester pregnant. The internal examination revealed that the part that connects the back of the head to the spinal column was separated, by the separation of this, it pulled the spinal cord. This injury causes cessation of the heart and respiration. [Ms. Adams] also had fractured ribs, laceration of the liver and spleen, and a compound fracture of the femur bone. As for the unborn child, the fetus is normally in the uterine cavity, but here the doctor found the fetus outside the uterus, in the abdominal cavity and the fetus was outside of chorioamion sack that normally surrounds the fetus and holds the amniotic fluid. Dr. Wardak opined that this was caused by the impact of the accident, caused pressure on the abdomen, and as a result of that pressure, it ripped open the uterus wall and the sack filled with fluid. The doctor determined that [Ms. Adams] cause of death was multiple blunt impact injuries, the injury to the base of the neck would have been immediate[] incapacitation, a fatal injury. The unborn baby girl died from lack of blood flow and oxygen. [Dr. Wardak] estimated the fetus to have been between 31 and 36 weeks of gestation.

*Id.* at 7 (some formatting altered). Further, the trial court stated:

Detective David Schanes with the Montgomery County Detective Bureau - Forensic Services Unit examining a video recovered from Appellant's phone. The video was shot from the perspective of the driver inside the cab of the truck. During the course of the video, Appellant was following a black pickup truck. The 27

- 13 -

minute video was taken from Route 202 at Sumneytown Pike and followed series of roadways until South Park in Lower Providence. Importantly, around 650 feet prior to the crash, [Appellant] was going 58 [miles per hour], around the curve with a 25 [miles per hour] curve warning sign.

*Id.* at 14 (some formatting altered). Additionally, Detective Schanes testified that prior to the collision with Ms. Adams, Appellant was following the other pickup truck very closely, "less than one-second" behind him. N.T., 10/24/23, at 123.

Based on the totality of the circumstances, we cannot conclude that the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances to support the jury's conviction of Appellant for third-degree murder because the evidence the Commonwealth presented at trial of Appellant's guilt was overwhelming as described herein. *See Wright*, 255 A.3d at 552. For these reasons, we discern no error of law or abuse of discretion in the trial court concluding that the evidence was sufficient to establish the malice element of third-degree murder and third-degree murder of an unborn child. *See id.*; *see also Jones*, 271 A.3d at 458; *Ludwig*, 874 A.2d at 632; 18 Pa.C.S. § 2502(c); 18 Pa.C.S. § 2604(c)(1). Accordingly, Appellant is not entitled to relief.

**Discretionary Aspects of Sentencing**

In his second issue, Appellant asserts that the trial court abused its discretion as the sentence imposed was unduly harsh and manifestly excessive, and it failed to adequately consider mitigating factors, sentencing guidelines, and the sentencing code. *See* Appellant's Brief at 30-31, 40.

Appellant's issue presents a challenge to the discretionary aspect of his sentence. *See Commonwealth v. Disalvo,* 70 A.3d 900, 903 (Pa. Super. 2013) (explaining that a claim that the trial court failed to consider certain mitigating factors presents challenge to discretionary aspects of appellant's sentence); *Commonwealth v. Lutes*, 793 A.2d 949, 964 (Pa. Super. 2002) (stating that claims asserting that a sentence is manifestly excessive challenge the discretionary aspects of the sentence).

The Commonwealth argues that this issue is waived. *See* Commonwealth's Brief at 25-26. Specifically, the Commonwealth contends that the issue Appellant purports to raise was not included in his post-sentence motion. *See id.* at 26.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Rivera*, 312 A.3d 366, 376-77 (Pa. Super. 2024) (citations, quotation marks, and brackets omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion.

- 15 -

Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." ***Commonwealth v. Malovich***, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); ***see also*** Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

The record reflects that Appellant did not raise his claim at sentencing and his post-sentence motion alleged only that the "sentence is an abuse of the [trial c]ourt's discretion." Post Sent. Mot., 2/1/24. Upon review, we conclude that Appellant's post-sentence motion did not articulate any basis to establish that the trial court abused its discretion therefore, Appellant failed to preserve his challenge to the discretionary aspects of sentencing before the trial court that he now argues in his appellate brief to this Court. ***See Commonwealth v. Tejada***, 107 A.3d 788, 799 (Pa. Super. 2015) (holding that although the defendant filed a post-sentence motion challenging the discretionary aspects of his sentence, the post-sentence motion did not identify the issue the defendant argued on appeal, therefore, the issue was not preserved for appellate review and is waived; challenges to the discretionary aspects of sentence not raised at sentencing or in a post-sentence motion are not subject to our review, even if they were raised in a Rule 1925(b) statement); ***see also Commonwealth v. Cartrette***, 83 A.3d 1030, 1042 (Pa. Super. 2013) (explaining that issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing

proceedings). Accordingly, because Appellant's post-sentence motion failed to articulate how the trial court abused its discretion, he did not preserve his challenge before the trial court for appellate review, and it is waived.[7]

For these reasons, we conclude that Appellant is not entitled to relief. Therefore, we affirm Appellant's judgment of sentence.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/22/2025

---

[7] In any event, were we to conclude that Appellant preserved his challenge to the discretionary aspects of his sentence, we would affirm on the basis of the trial court's opinion. **See** Trial Ct. Op., 4/12/24, at 22-26.