J-S23016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN  DIGBY | : | |
| | : | |
| Appellant | : | No. 2255 EDA 2024 |

Appeal from the Judgment of Sentence Entered April 1, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001481-2023

BEFORE:  STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:                                    **FILED JULY 14, 2025**

Justin Digby (Appellant) appeals from the judgment of sentence entered following his conviction by the trial court of two counts of criminal trespass, and one count each of burglary, simple assault, and recklessly endangering another person (REAP).[1]  Appellant challenges the sufficiency and weight of the evidence underlying his convictions.  After careful consideration, we affirm.

During the evening of December 23, 2022, Appellant entered the Philadelphia home of Q.W. and her three children.[2]  Appellant did not reside at Q.W.'s home at the time of the incident.  According to Q.W., she previously

---

[1] 18 Pa.C.S.A. §§ 3503(a)(1)(ii), 3502(a)(i), 2701(a)(1)(i), 2705.

[2] Appellant is the father of one of Q.W.'s children.

had texted Appellant regarding the retrieval of some of his belongings from the home, but did not text Appellant on the day of the incident.

Using an unauthorized key to the residence, and without Q.W.'s permission, Appellant entered Q.W.'s home and brandished a firearm. Q.W. told Appellant to leave; he did not respond. Q.W. retrieved her own firearm from her pocket and told her daughter to call the police. As Q.W. proceeded upstairs in the residence, Appellant followed. Once upstairs, Appellant grabbed Q.W. by the throat. Appellant and Q.W. struggled for control of Q.W.'s firearm, at which time the clip fell out of the firearm.

Following that altercation, Appellant proceeded back downstairs and retrieved a bag containing Q.W.'s firearms, clips, and ammunition. According to Q.W., Appellant threw her onto the kitchen counter. Q.W. grabbed two knives from the counter and struck Appellant. Appellant sustained wounds to his chest and hand. Thereafter, Appellant left with the bag. As a result of the incident, Q.W. sustained bruises on her back and knee, a cut on her lip, and a black eye.

Following a bench trial, Appellant was convicted of the above-listed offenses. On April 1, 2024, the trial court sentenced Appellant to an aggregate 4-8 years in prison, followed by four years of reporting probation. Appellant timely filed a post-sentence motion, which the trial court denied by operation of law. Thereafter, Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

A. Was the evidence insufficient to sustain the guilty verdicts for burglary and the criminal trespasses[,] as [A]ppellant lawfully entered the home and used his own key to enter the home after being invited by complainant to enter in order to gather his belongings[, and] [A]ppellant did not intend to place anyone at risk of serious bodily injury or death, and did not engage in sufficiently criminal assaultive behavior to sustain the offenses, but rather[,] the evidence was that this was a domestic disturbance, which negated criminal intent for simple assault as a[ second-degree misdemeanor (M2)], and at most was a simple assault as a[ third-degree misdemeanor (M3)]—mutual combat?

B. Were the verdicts against the weight of the evidence as [A]ppellant lawfully entered the home with his own key and complainant invited [A]ppellant to enter the home to gather his belongings, which negated any breaking into and/or unlawful entry for burglary and the criminal trespasses[, and] [c]omplainant's testimony was largely incredible, and the incident amounted to a mutual scuffle and domestic disturbance, which negated criminal intent for REAP, and simple assault as an M2?

Appellant's Brief at 7 (issues reordered).

Appellant's first issue challenges the sufficiency of the evidence underlying his convictions. When reviewing a challenge to the sufficiency of the evidence, we are governed by the following standard:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so

weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Wright*, 255 A.3d 542, 552 (Pa. Super. 2021) (citation omitted). "Importantly, the [fact-finder], which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Id.* (citation and internal quotation marks omitted).

Appellant was charged with one count of criminal trespass as a third-degree felony and one count of criminal trespass as a second-degree felony. The Crimes Code defines the crime of criminal trespass as follows:

**(a) Buildings and occupied structures.**

**(1)** A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

**(i)** enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

**(ii)** breaks into any building or occupied structure or separately secured or occupied portion thereof.

**(2)** An offense under paragraph (1)(i) is a felony of the third degree, and an offense under paragraph (1)(ii) is a felony of the second degree.

**(3)** As used in this subsection:

**"Breaks into."** To gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access.

18 Pa.C.S.A. § 3503(a).

The Crimes Code defines burglary, in relevant part, as follows:

**§ 3502. Burglary**

**(a) Offense defined.—**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

**(1)(i)** enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein[.]

18 Pa.C.S.A. § 3502(a)(1)(i).

The intent to commit a crime after entry may be inferred from the circumstances surrounding the incident. While this intent may be inferred from actions as well as words, the actions must bear a reasonable relation to the commission of a crime. Once one has entered a private residence by criminal means, we can infer that the person intended a criminal purpose based upon the totality of the circumstances.

***Commonwealth v. Lambert***, 795 A.2d 1010, 1022 (Pa. Super. 2002) (*en banc*) (citation omitted).

The Crimes Code defines the crime of simple assault as follows:

**(a)** *Offense defined.* **—** Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

**(1)** attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

- 5 -

\*    \*    \*

**(b) *Grading.* —** Simple assault is a misdemeanor of the second degree unless committed:

> **(1)** in a fight or scuffle entered into by mutual consent, in which case it is a misdemeanor of the third degree ….

18 Pa.C.S.A. § 2701(a)(1), (b)(1).

Finally, regarding the crime of REAP,

> [a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

*Id.* § 2705.

Appellant challenges the sufficiency of the evidence underlying each of his convictions. Appellant first challenges the sufficiency of the evidence underlying his convictions of criminal trespass as a second-degree misdemeanor. Appellant's Brief at 26. Appellant argues that Q.W. invited him to gather his belongings from her home. *Id.* at 29. Further, Appellant "used his own key to gain entry, while being licensed to be in the home, as he was invited to gather his belongings." *Id.*

Regarding the crime of burglary, Appellant argues the evidence established that he lawfully entered Q.W.'s home, and "there is no evidence he intended to commit a crime therein." *Id.* at 27. Appellant further argues that he entered the home with Q.W.'s consent. *Id.* According to Appellant, Q.W. had invited him to come to the home to gather his belongings, "which were *inside* of the home by the door." *Id.* (emphasis in original). Because

the evidence established he was an invitee, Appellant argues, the evidence is insufficient to sustain his conviction of burglary. *Id.* at 28. Appellant asserts

> [h]is reason for being present was completely lawful. He entered the home for completely lawful reasons, and the mutual scuffle that ensued was not [A]ppellant's intent at the time of entry.

*Id.* Appellant additionally asserts there is no evidence he intended to commit a crime after his entry into the residence. *Id.* In support, Appellant argues that because his entry was lawful, an intent to commit a crime inside the residence cannot be inferred. *Id.*

Appellant challenges his conviction of simple assault as an M2, claiming "the evidence failed to prove this was a one-sided affair where [Appellant] assaulted [Q.W.]" *Id.* at 30. Rather, Appellant argues, the incident was a "domestic scuffle that was mutually entered into by both parties, which only established simple assault as an M3—mutual consent." *Id.* According to Appellant, the incident was a "disagreement over the ownership of guns in a bag that were in the home." *Id.* Appellant points out that the "scuffle" "was mutually entered into for up to an hour in length." *Id.*

Regarding REAP, Appellant concedes that he pointed a firearm at Q.W. *Id.* at 31. Appellant further acknowledges that he placed his hands on Q.W.'s neck, but points out Q.W.'s trial testimony that "she was not sure if she suffered impeded blood circulation or breathing." *Id.* He points out that Q.W. did not lose consciousness, and alleges Q.W.'s circulation was not impeded.

*Id.* at 32. Thus, Appellant argues, the evidence is not sufficient to sustain his

conviction of REAP. *Id.*

The trial court concisely summarized the evidence presented at trial:

At a jury waiver trial on January 5, 2024, … Q.W.[] testified that on the evening of December 23, 2022, she was at home with her three children when Appellant … entered her home with a firearm. N.T. 1/5/[]24, [at] 10 (at home), 12 (Appellant entered). Appellant, who is the father of one of Q.W.'s children, did not reside in her home at the time of the incident, did not have any belongings in the home, and did not have permission to enter the home. [*Id.* at] 11 (father), 12 (residence, belongings, permission). Appellant entered using a key, which Q.W. was not aware was still in Appellant's possession. Q.W. testified that Appellant was not allowed to have the key to her home at the time of the incident. [*Id.* at] 13. Q.W. had texted Appellant regarding some of his belongings on December 17, 2022[,] and December 19, 2022[,] but did not send any messages to Appellant on December 23, 2022. [*Id.* at] 39, 43 (12/17/22 messages), 47 (12/19/22 messages), 49 (no messages on 12/23).

Upon entering, Appellant lifted the gun and pointed it at Q.W. [*Id.* at] 14-15. Q.W. told Appellant to leave. He did not respond. [*Id.* at] 15. Q.W. then retrieved her own weapon, a nine-millimeter Canik, from her sweatshirt pocket. [*Id.* at] 15-16. Appellant moved closer to Q.W., and she put her gun "right in his face." [*Id.* at] 16-17. Q.W. told her older daughter to call the police and then went upstairs. Appellant followed. [*Id.* at] 17. Once they were upstairs, Appellant grabbed Q.W. by the throat. Q.W. did not recall whether Appellant's grip made it hard for her to breathe at that point. [*Id.* at] 18-19 (grabbed by throat), 19-20 (breathing). Appellant and Q.W. struggled for control of her gun. Appellant was able to get the gun from Q.W., and the clip fell out during the struggle. [*Id.* at] 20. Appellant's hands were still around Q.W.'s throat, and she testified that at that point she was "seeing stars. Then [she saw] red and [she saw] black." [*Id.* at] 20. Q.W. testified that she had "a little memory" of not being able to breathe normally. [*Id.* at] 21. Appellant then told Q.W. that he was going to find her other guns, and went back downstairs. [*Id.* at] 22. Q.W. followed Appellant and observed him walk through the kitchen to a back closet. Appellant retrieved a bag from the closet that contained Q.W.'s other firearms, extra

clips, and ammunition. [*Id.* at] 21 (followed), 23 (weapons). All of the firearms in question were in working order. [*Id.* at] 25-26. Appellant then grabbed Q.W. by the neck and threw her on the counter. Q.W. grabbed two knives and started swinging them at Appellant to stop him from leaving. [*Id.* at] 24 (counter, knives), 24 (swinging). Q.W. struck Appellant in the chest and hand with one of the knives. [*Id.* at] 25. Appellant left with the bag. Q.W. testified that 30 to 60 minutes elapsed between the time Appellant arrived and when he left her home. [*Id.* at] 26-27. When the police arrived, they [transported] her to identify Appellant, whose vehicle they had stopped at another location. [*Id.* at] 28. Q.W. testified that as a result of this incident[,] she had bruises on her back, a bruise on her right knee, a "busted lip," and a black eye. She did not seek medical treatment for her injuries. [*Id.* at] 26. Q.W. testified that she never asked Appellant to return the key to her home, and that she changed her locks the day after the incident. [*Id.* at] 50.

Philadelphia Police Officer Joseph Nyuma also testified at Appellant's trial. Officer Nyuma testified that on December 23, 2022, he came into contact with Appellant, who was driving a Jeep. [*Id.* at] 53, 54-55. Officer Nyuma observed that Appellant was injured and appeared to be bleeding. [*Id.* at] 57 (injured), 60 (bleeding). Officer Nyuma, who did not search Appellant's vehicle, did not observe any weapons inside from his vantage point. [*Id.* at] 61. Both parties stipulated that had Philadelphia Police Detective Raphael McGough been called, he would have testified no firearms were found during a search of Appellant's vehicle. [*Id.* at] 63.

Trial Court Opinion, 10/21/24, at 1-3 (citations to notes of testimony line numbers omitted). The record confirms the trial court's summary of the relevant testimony.

Contrary to Appellant's assertions, the evidence was sufficient to establish the crimes of burglary and trespass. Although Appellant claimed he had permission or license to enter Q.W.'s residence, Q.W. testified otherwise. The trial court credited Q.W.'s version of the events. Trial Court Opinion,

10/21/24, at 5. "[E]ven the uncorroborated testimony of a single witness may alone be sufficient to convict a defendant." ***Commonwealth v. Crosley***, 180 A.3d 761, 768 (Pa. Super. 2018) (citation omitted). We cannot substitute our judgment for that of the trier of fact. ***Commonwealth v. Manley***, 985 A.2d 256, 262 (Pa. Super. 2009).

Viewed in a light most favorable to the Commonwealth, Q.W.'s testimony established that Appellant entered Q.W.'s residence without license or permission, pointed a firearm at her, and assaulted her. N.T. 1/5/24, at 11, 14-15. This evidence established that Appellant entered Q.W.'s home without license and permission, intending to commit a crime therein. ***Lambert***, 795 A.2d at 1022. Appellant's challenge to the sufficiency of the evidence underlying his burglary and trespass convictions merits no relief.

Appellant's challenge to the sufficiency of the evidence underlying his conviction of simple assault, graded as an M2, is likewise unavailing. Although Appellant claimed that he engaged in a mutual scuffle with Q.W., the evidence established that he entered Q.W.'s residence, pointed a firearm at Q.W., placed his hands around Q.W.'s throat, and caused her to see "stars," "red," and then "black." N.T. 1/5/24, at 14-15, 20. This evidence is sufficient to establish that Appellant and Q.W. did not enter into a mutual scuffle. Appellant's challenge to the sufficiency of the evidence underlying his conviction of simple assault as an M2 warrants no relief.

Finally, Appellant's conviction of REAP is supported by sufficient evidence. Contrary to Appellant's claim, the evidence established that Appellant placed his hands around Q.W.'s neck, causing her to "see[] stars," then red, and then black. N.T., 1/5/24, at 20. A conviction may be sustained by wholly circumstantial evidence. **Wright**, 255 A.3d at 552. The trial court, as fact finder, was free to infer that Q.W.'s "seeing stars," "red" and "black" indicated that Appellant's actions impeded Q.W.'s breathing and/or circulation. N.T., 1/5/24, at 20. Appellant's challenge to the sufficiency of the evidence underlying his REAP conviction merits no relief.

In his second issue, Appellant challenges the verdicts as against the weight of the evidence.[3] Appellant's Brief at 16. Appellant argues that he was "invited to the home by [Q.W.], and he used his own key to enter the home." **Id.** at 19. Because he was invited, Appellant asserts, the element of "breaks into" was not met, and the guilty verdicts for burglary and criminal trespass shock the conscience. **Id.** According to Appellant, the evidence showed he tried to leave the home, but Q.W. "physically blocked him from leaving." **Id.** at 20. Appellant repeatedly asserts he was invited into the home by Q.W. **Id.** at 21. Appellant argues,

> [i]t is true that, after the entry, there was a series of events where both [A]ppellant and [Q.W.] seemed to have been mutually assaultive. But this was after [and] separate from the lawful entry. Therefore[,] the guilty verdict was shocking to one's sense of justice, as the evidence disproved criminal trespass as well.

---

[3] Appellant preserved this claim in his post-sentence motion.

*Id.* at 21-22.

Appellant also challenges the trial court's credibility determination. *Id.* at 22. Appellant argues that Q.W. "lied when she testified that [Appellant] had no permission to be in the home." *Id.* Appellant directs our attention to evidence that Q.W. had invited Appellant to her home to retrieve his belongings. *Id.*

As to his conviction of simple assault, Appellant argues that the evidence established "mutual combat between two ex-lovers who took bickering and disagreement to an extreme level." *Id.* at 23. Appellant contends that the Commonwealth established the crime of simple assault as an M3, not an M2. *Id.* In support, Appellant points out that he sustained more severe injuries than those sustained by Q.W. *Id.* In addition, Appellant asserts that police recovered no firearms from his vehicle, thereby negating Q.W.'s testimony that Appellant removed weapons from the home. *Id.* Appellant further claims that the evidence established only a mutual domestic incident. *Id.* at 24.

For the same reasons stated above, Appellant argues his conviction of REAP was also against the weight of the evidence. *Id.* at 25. Appellant asserts the evidence disproved that he placed anyone in danger of death or serious bodily injury. *Id.* Appellant claims he was invited into the home, where Q.W. waited with a firearm. *Id.* He asserts "there is a strong indication that [Q.W.] began the scuffle, and [Appellant] was trying to disarm her." *Id.*

at 25-26. According to Appellant, his conduct was "defensive, and so was the fresh wound to his hand." *Id.* at 26.

A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. ***Commonwealth v. Cousar***, 928 A.2d 1025, 1035-36 (Pa. 2007).

> An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

*Id.* at 1036 (citation omitted).

The trial court considered and rejected Appellant's challenge to the verdicts as against the weight of the evidence:

> [The trial court], sitting as the sole finder-of-fact, determined that Q.W.'s testimony was credible. N.T. 1/5/[]24[, at] 77. Q.W. testified that Appellant was no longer allowed to have a key to her home and did not have permission to enter her home on December 23, 2022. [*Id.* at] 12. Therefore, [the court's] determination that Appellant's entry was unlawful is not against the weight of the evidence. Q.W. also testified that Appellant entered her home brandishing a gun, which he immediately pointed at her. [*Id.* at] 12, 14-15. Q.W. drew her own weapon in response. [*Id.* at] 15-16. Appellant then grabbed Q.W. by the throat, fought to disarm her, and continued holding her throat [] with enough force that[,] at some point[,] her vision went black. [*Id.* at] 18-19, 20. Appellant also slammed Q.W. onto the

counter. In response, Q.W. grabbed knives to defend herself. [*Id.* at] 24. Therefore, [the trial court's] determination that Appellant possessed "a conscious disregard of a known risk of death or great bodily harm to another person," and the intent to cause bodily injury, and that the fight was not entered into by mutual consent, does not go against the weight of the evidence. *See* 18 Pa.C.S.[A.] § 2701 (a)(1) (a person is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another"); 18 Pa.C.S.[A.] § 2701 (fight or scuffle by mutual consent is misdemeanor of the third degree); *Commonwealth v. Peer*, 684 A.2d 1077, 1080 (Pa. Super. 1996) (REAP - conscious disregard).

Trial Court Opinion, 10/21/24, at 6-7 (citations to notes of testimony line numbers omitted).

The trial court's findings are supported in the record and its legal conclusion is sound. We decline Appellant's invitation to act as fact-finder, reweigh the evidence, and disturb credibility findings based on a cold record. *See Commonwealth v. Sanchez*, 262 A.3d 1283, 1288-89 (Pa. Super. 2021) ("[I]t is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded [] evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record." (citations omitted)). We discern no abuse of the trial court's discretion in rejecting Appellant's weight challenge. Appellant's challenge to the weight of the evidence warrants no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 7/14/2025