J-S44003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :         PENNSYLVANIA
                                :
              v.                :
                                :
                                :
WASIM ROSS                      :
                                :
          Appellant             :    No. 2035 EDA 2025

Appeal from the Judgment of Sentence Entered July 29, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005929-2022

BEFORE:  LAZARUS, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED MARCH 13, 2026**

Wasim Ross appeals from the judgment of sentence, imposed in the

Court of Common Pleas of Philadelphia County, after he was convicted, in a

nonjury trial, of possession with intent to distribute Xanax pills (PWID).[1]  Upon

review, we affirm.

The trial court summarized the factual history as follows:

On May 27, 2020, Officer [Brian] Outterbridge of the Philadelphia
Police Department [] Narcotic Strike Force (NSF) set up a plain
clothes narcotics surveillance around 9:50 a.m.  At that time, the
[] NSF's primary focus was investigating outdoor narcotic sales in
targeted districts known to be "hot" with narcotics sales.  Officer
Outterbridge set up his surveillance at 2801 Kensington Ave[nue],
an area known for narcotics sales in Philadelphia.  He observed
[Ross] standing on the north side of the street on the corner of
Kensington and Summerset.

At approximately 10:05 a.m., [Ross] was approached by [M.B., at
which time] a brief conversation ensued.  M.B. then handed [Ross]

_____

[1] 35 P.S § 780-113(a)(30).

an undetermined amount of United States Currency (USC) and [Ross] handed him small objects in return. M.B. then left the area northbound, [and] a description of M.B. and his direction of travel was relayed via radio to backup police officers. M.B. was stopped by officers on the 2900 [b]lock of Kensington [Avenue]. Police officers recovered one green Xanax pill from M.B.'s person.[2]

At approximately 10:20 a.m., [Ross] was approached by [M.M., at which time] a brief conversation ensued. M.M. then handed [Ross] an undetermined [amount] of USC and [Ross] handed her small objects in return. M.M. left the area, [and] a description of M.M. and her direction of travel was relayed via radio to backup officers and M.M. was stopped. Police officers recovered Xanax from M.M.'s person.

At approximately 10:32 a.m., [Ross] was arrested by Officer Newman. Officer Newman recovered [$43.00] from [Ross], in denominations of two twenty-dollar bills and three one-dollar bills.

Trial Court Opinion, 9/24/25, at 3 (citations to the record omitted).

Ross was charged with, *inter alia*,[3] one count of PWID. On July 29, 2025, Ross proceeded to a bench trial. The Commonwealth's sole witness was Officer Outterbridge, who observed Ross's interactions with M.B. and M.M.[4] At the close of trial, the trial court found Ross guilty of only the PWID charge and sentenced him to eighteen months' probation. Ross did not file a post-sentence motion. Ross filed a timely notice of appeal and court-ordered

---

[2] According to Officer Outterbridge's testimony, M.B. was walking with another man, Mr. A., who was later found to be carrying controlled substances and was also arrested. **See** N.T. Trial, 7/29/25, at 17–21.

[3] Ross was also charged with intentional possession of a controlled substance, 35 P.S. § 780-113(a)(16), but was not found guilty on that charge.

[4] The trial court found Officer Outterbridge's testimony credible. **See** Trial Court Opinion, 9/24/25, at 5 n.2.

Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He raises two issues for our review:

1. Whether the trial court erred and abused its discretion when it found [] Ross guilty of possession with intent to deliver Xanax pills?

2. Whether the evidence introduced at trial and all reasonable inferences derived from the evidentiary record, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to establish all elements of possession with intent to deliver Xanax pills beyond a reasonable doubt, as to [Ross]?

Appellant's Brief, at 6 (unnecessary capitalization omitted).

Before proceeding to the merits of Ross's appeal, we address the trial court's determination that Ross waived his first issue by failing to raise it with sufficient specificity in his Rule 1925(b) statement.[5] *See* Trial Court Opinion, 9/24/25, at 6–8. The trial court notes that Ross simply asserts that the court abused its discretion,[6] and that "[Ross'] overly broad and vague assertion of abuse of discretion is such that this [c]ourt cannot meaningfully address it." *Id.* at 7–8. We agree.

The purpose of the Rule 1925(b) statement is to "allow[] the trial court to identify and focus on those issues the parties plan to raise on appeal," thereby facilitating appellate review. ***Commonwealth v. Arnold***, 284 A.3d

---

[5] The Commonwealth also argues that Ross has waived this claim. *See* Appellee's Brief, at 6–7.

[6] Ross's Rule 1925(b) statement reads, "The trial court erred and abused its discretion when it found [Ross] guilty of possession with intent to deliver Xanax pills." Concise Statement of Matters Complained of on Appeal, 7/30/25, at 1 (unnecessary capitalization omitted).

1262, 1279 (Pa. Super. 2022). Thus, a Rule 1925(b) statement that is too vague can result in waiver of issues on appeal. ***Id.; see also Commonwealth v. Dowling***, 778 A.2d 683, 686–87 (Pa. Super. 2001). Ross's first issue is so vague that we cannot discern what he is challenging, or under what theory. Moreover, even if we were to excuse the vagueness in Ross' Rule 1925(b) statement, he also does not further clarify or even address the issue in his appellant brief. Thus, it is waived on that basis as well. ***See*** Pa.R.A.P. 2119(a) (providing appellant's arguments shall include "such discussion and citation of authorities as are deemed pertinent").

In his second issue, Ross challenges the sufficiency of the evidence to support his conviction for PWID. He argues that because he had no drugs in his possession when he was stopped, and Officer Outterbridge briefly lost sight of M.B. and M.M. after their interactions with Ross, the evidence was insufficient to support his conviction. ***See*** Appellant's Brief, at 14–15. He suggests that M.B. and M.M. might have gotten the drugs from somewhere or someone else, perhaps Mr. A., with whom M.B. was found. ***Id.***

In response, the Commonwealth argues that the evidence was sufficient to prove Ross constructively possessed the Xanax, because Officer Outterbridge's observations (specifically, the multiple hand-to-hand exchanges) and the subsequent recovery of drugs from M.M. and M.B., paired with Officer Outterbridge's experience with drug transactions and knowledge of the local area, supported the trial court's inferences. ***See*** Appellee's Brief, at 11–12. It observes that the court need not rule out all possibilities of

innocence, so long as the evidence believed by the fact-finder is sufficient to support the verdict.[7] We agree with the Commonwealth.

Our standard of review of an appellant's challenge to the sufficiency of the evidence is well-settled:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not [re-]weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually

---

[7] The Commonwealth urges us to find this claim is also waived because Ross did not specify which elements of PWID he believed were not adequately proven. *See* Appellee's Brief, at 7–8, citing **Commonwealth v. Boyer**, 347 A.3d 689 (Pa. Super. 2025). The trial court did not find that Ross waived his sufficiency claim, and we decline to do so as well. Ross's Rule 1925(b) statement challenges the trial court's finding of guilt on the grounds that the evidence "is insufficient to establish **all elements of possession with intent to deliver** Xanax pills beyond a reasonable doubt." Pa.R.A.P. 1925(b) Statement, 7/30/25, at ¶ 2 (emphasis added). While one could read Ross's statement as a vague challenge to the overall crime, one could also read it as directly challenging all elements of PWID. This appears to be the way the trial court interpreted Ross's Rule 1925(b) statement, and we find that the trial court fully addressed the issue in its opinion. Notably, **Boyer**, **supra**, and the cases upon which it relies, involve defendants facing multiple charges with multiple elements each. **Compare Commonwealth v. Laboy**, 936 A.2d 1058, 1060 (Pa. 2007) (declining to find waiver for alleged failure to adequately develop sufficiency of evidence claim where, *inter alia*, matter was "relatively straightforward drug case" and trial court "readily apprehended [defendant's] claim and addressed it in substantial detail").

received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced[,] is free to believe all, part[,] or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Bostick*, 958 A.2d 543, 560 (Pa. Super. 2008), quoting

*Commonwealth v. Smith*, 956 A.2d 1029, 1035–36 (Pa. Super. 2008) (en

banc).

To find the evidence sufficient to sustain a PWID conviction, "[t]he Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance." *Commonwealth v. Brown*, 904 A.2d 925, 931 (Pa. Super. 2006). Possession can be demonstrated by actual possession, constructive possession, or joint constructive possession. *Commonwealth v. Rojas-Rolon*, 256 A.3d 432, 437 (Pa. Super. 2021), citing *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018). In the absence of actual possession, the Commonwealth must prove the defendant constructively possessed the controlled substance by exercising "conscious dominion," defined as "the power to control the contraband and the intent to exercise that control." *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013), quoting *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012); *see Parrish*, 191 A.3d at 36. "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Mudrick*, 507 A.2d 1212, 1213 (Pa. 1986). "To aid application, we have held that constructive possession may be established by the totality of the

circumstances." ***Commonwealth v. Wright***, 255 A.3d 542, 553 (Pa. Super. 2021), quoting ***Hopkins***, 67 A.3d at 820.

With regard to establishing intent to deliver, "[i]t is well[-]settled that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with intent to deliver." ***Brown***, 904 A.2d at 931. "The trier of fact may infer that the defendant intended to deliver a controlled substance from an examination of the facts and circumstances surrounding the case." ***Commonwealth v. Kirkland***, 831 A.2d 607, 611 (Pa. Super. 2003). While in some cases the quantity of contraband can be dispositive as to intent, when it is not, the court may look to other factors, such as "the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large[] sums of cash found in possession of the defendant." ***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1237–38 (Pa. 2007), quoting ***Commonwealth v. Jackson***, 645 A.2d 1366, 1368 (Pa. Super. 1994). While constructive possession cannot be based on mere presence, the fact-finder "need not ignore presence, proximity[,] and association when presented in conjunction with other evidence of guilt." ***Commonwealth v. Vargas***, 108 A.3d 858, 869 (Pa. Super. 2014) (citation omitted).

Mindful of these standards, the trial court in this case carefully considered the totality of the circumstances, and found that possession with intent to deliver was established based on the credible testimony of Officer Outterbridge. Specifically, Officer Outterbridge testified that: (1) he was an

experienced NSF officer who had set up surveillance in an area known to be "hot" for outdoor narcotics sales; (2) he observed Ross participate in two hand-to-hand transactions in under twenty minutes, holding brief conversations with both buyers, and receiving USC in exchange for small objects; (3) both buyers were stopped in close proximity to Ross, mere minutes later, and both possessed Xanax; and (4) Ross was arrested with $43.00 in his possession. *See* Trial Court Opinion, 9/24/25, at 5–6. Upon review, we agree with the trial court's analysis.

As the trial court observed, the police officers found Xanax on both M.B. and M.M. within moments of their interactions with Ross, and they were apprehended a short distance away. Considering the totality of the circumstances, the trial court's determination that it was more likely than not that Ross constructively possessed the Xanax was entirely reasonable. *Compare, e.g.*, *Commonwealth v. Roberts*, 133 A.3d 759, 768 (Pa. Super. 2016) (constructive possession established where controlled substances were found on ground by police near where they had seen defendant running and close by what appeared to be his phone) *with, e.g.*, *Kirkland*, 831 A.2d at 611 (reversing PWID conviction where there was no indication defendant was in area known for drug activity, no currency was discovered on defendant, and no one saw defendant engage in drug transactions).

The trial court also properly considered all relevant facts and circumstances and reasonably concluded that Ross intended to distribute controlled substances. Trial courts are permitted to consider the facts and

circumstances surrounding possession when determining intent, *see Brown*, 904 A.2d at 931, and here, the trial court considered the experienced officer's knowledge of drug trafficking in the area,[8] his observation of the transactions, and the fact that, upon arrest, M.B. and M.M. had controlled substances and Ross had money. *See Jackson*, 645 A.2d at 1368 (can use surrounding circumstances to determine whether controlled substances are being used for distribution versus "personal consumption"). The Commonwealth correctly observes that the case is very similar to *Lee*, *supra*, where the police witnessed two drug transactions, the apparent buyers were later found with drugs, the defendant was found with money, and the defendant did not possess any drug paraphernalia. *See* Appellee's Brief, at 10–11; *Lee*, 956 A.2d at 1028.

Ross's argument proposes an alternative conclusion the trial court **could have** reached from the facts presented at trial, speculating that

> [f]or all we know, since the police lost sight of [M.B., M.M., and defendant Mr. A.] for a brief period o[f] time, and all three had drugs on their person, either (i) [M.M. and M.B.] bought their drugs from [Mr. A.], or (ii) [M.M. and M.B.] already had the drugs on their person prior to meeting up with [Ross].

_____

[8] Officer Outterbridge testified that, as an officer assigned to the NSF and previously assigned to the Narcotics Enforcement Team, he has handled over one thousand surveillance operations and was trained in identifying narcotics transactions. *See* N.T. Trial, 7/29/25, at 15–16. The NSF handles all outdoor narcotics sales in Philadelphia and primarily targets approximately seven "hot" districts; Officer Outterbridge set up surveillance at Ross's location because it was an area "known to service drugs[,] primarily crack and heroin." *Id.*

Appellant's Brief, at 10, 14–15. The fact that the trial court might have interpreted the evidence this way, however, does not mean that should have done so.[9] "The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence" to be affirmed on appeal. *Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014). When viewing the facts in the light most favorable to the Commonwealth, as we must, we are constrained to find that the trial court did not abuse its discretion in finding that, under the totality of the circumstances, the record supported a finding that Ross constructively possessed the controlled substance with the intent to distribute it. Thus, Ross is not entitled to relief.

_____

[9] Arguments similar to those made by the defendant have been considered—and rejected—by this Court in previous cases. For example, the mere fact that police lose sight of a defendant during the course of a crime does not require reversal, particularly where there is uninterrupted radio contact between officers who are all part of the investigation. *See, e.g.*, *Commonwealth v. Sparrow*, 323 A.2d 293, 303–04 (Pa. Super. 1974) (mere fact police officer very briefly lost sight of defendant before defendant was arrested did not defeat identification). Moreover, the testimony reflects that while Officer Outterbridge himself lost sight of M.B. and M.M., he was in radio contact with the backup officers who arrested the other two suspects. *See, e.g., Rojas-Rolon*, 256 A.3d at 438 (during controlled buy, four officers were conducting visual surveillance of transaction and were in radio contact with one another throughout; thus, trial court's finding drug transaction occurred in vehicle defendant was driving was reasonable).

Our courts have also considered the relevance of the location and whether it is a high-drug-trafficking area, which the trial court here considered as well. *See, e.g.*, *Brown*, 904 A.2d at 932 (observation of defendant in "very high drug area" and fact that police officer was part of "CLEAN" squad that regularly monitored drug activity were relevant to totality of circumstances test); *Commonwealth v. Johnson*, 782 A.2d 1040, 1040–41 (Pa. Super. 2001) (fact defendant was viewed in high-drug area relevant to sufficiency analysis).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/13/2026